United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 24, 2007**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 06-11177
Summary Calendar

JAMES J. ARMSTRONG,

Plaintiff-Appellant,

versus

ASSOCIATES INTERNATIONAL HOLDINGS CORP. d/b/a
CITIFINANCIAL INTERNATIONAL LTD; d/b/a ASSOCIATES FINANCE;
CITIGROUP, INC.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Texas
Civil Action No. 3:05-cv-02006

Before DeMOSS, STEWART, and PRADO, Circuit Judges.

PER CURIAM:[*]

This appeal arises from the district court's grant of the motion to compel filed by Associates

International Holding Corp., which does business as Citifinancial International, Ltd ("Citifinancial").

We affirm the district court's judgment.

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Citifinancial hired James J. Armstrong ("Armstrong") in November 2000, as assistant general counsel, after Citifinanicial acquired Armstrong's former employer. Citifinancial is one of many entities that are collectively known as the U.S. Consumer Group. On December 17, 2001, the Senior Human Resources Officer issued a memorandum to all U.S. Consumer Group employees that, effective immediately, the company was implementing an employment arbitration policy. U.S. Consumer Group employees received a copy of the policy attached to the memorandum. The memorandum stated that, under the employment arbitration policy, "you and the Company agree to make arbitration the required and exclusive forum for resolution of all employment-related disputes that are based on legally protected rights." Employees were required to acquiesce in the policy as a condition of employment. According to the memorandum, an employee's "continued employment will constitute acceptance of the Arbitration Policy." The policy covered an array of employment-related disputes, including Age Discrimination in Employment Act claims, breach of contract claims, and the Employee Retirement Income Security Act of 1974 claims. Finally, the memorandum directed each employee to sign and return an acknowledgment of receipt attached to the document.

On December 18, 2001, Armstrong signed the acknowledgment, and continued in his position with Citifinancial. In this appeal, however, Armstrong contends that Citifiniancial sent the form to him in error. In an affidavit submitted to the district court, Armstrong declares that

> To the best of my knowledge, CitiFinancial International, my assigned business unit, was not included within the U.S. Consumer Group; I understood that the U.S. Consumer Group Policy had been erroneously sent to me because my temporary legal supervisor had been and was Martin Wong, the General Counsel of Citigroup's finance operations in the United States; and Associates International Holdings Corporation was providing services to Citigroup's International consumer finance.

2

On November 7, 2002, Armstrong received a copy of the 2002 Employee Handbook, which contained the same employment arbitration policy attached to the December 2001 memorandum. Once again, Armstrong signed and returned an acknowledgment form attached to the handbook. The acknowledgment form contained the following language:

> I understand that this Handbook contains a provision that requires me to submit employment-related disputes to binding arbitration. [ ] I have read that provision carefully. I also understand that no provision of this Handbook or elsewhere is intended to constitute a waiver, nor be construed to constitute a waiver, of the Company's right to compel arbitration of employment-related disputes.

Although Armstrong contends that he did not believe that the employment arbitration policy or the manual applied to Citifinancial employees, the handbook cover identifies Citifinancial as a member of the U.S. Consumer Group. Shortly thereafter, Citifinancial informed Armstrong that the company intended to eliminate his position. On January 2, 2003, Armstrong resigned from Citifinancial.

On May 15, 2004, Armstrong filed his complaint in the District of Puerto Rico, but the court transferred the case to the Northern District of Texas. On March 3, 2006, Citifinancial and Citigroup filed their motion to compel arbitration and to dismiss or stay the case. On September 12, 2006, the district court granted the motion to compel arbitration and dismissed the case. Armstrong now appeals.

## II. STANDARD OF REVIEW

We review de novo a district court's ruling on a motion to compel arbitration. *See Webb v. Investacorp, Inc.*, 89 F.3d 252, 257 (5th Cir. 1996). If the district court did not err in granting a motion to compel, its decision to dismiss the case as opposed to staying the case should be reviewed under an abuse of discretion standard. *Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 679 (5th Cir. 1999); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).

3

III.  DISCUSSION

Under the Federal Arbitration Act (the "FAA"), "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  When a party agrees to arbitrate in a particular state, via explicit or implicit consent, the district courts of the agreed upon state may exercise personal jurisdiction over the parties for the limited purpose of compelling arbitration.  *PaineWebber, Inc. v. The Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 453, 461 (5th Cir. 2001).

Moreover, "courts apply the contract law of the particular state that governs the agreement." *Washington Mut. Fin. Co. v. Bailey,* 364 F.3d 260, 264 (5th Cir. 2004) (*citing First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  To determine whether the parties agreed to arbitrate a dispute, the district court considers: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of the arbitration agreement.  *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996).  When a contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)).

Under Texas law, employers may modify the terms of an at-will employment relationship as a condition of continued employment so long as employers provide notice of the modification and the employees accept the change.  *In re Halliburton Co.*, 80 S.W.3d 577, 568 (Tex. 2002).  An

4

employee's continued employment with knowledge of a change in the at-will employment relationship constitutes acceptance of the change as a matter of law. *Id.* at 568.

Here, Armstrong agreed in writing to the employment arbitration policy on two separate occasions. In December 2001, Armstrong signed an acknowledgment form that confirmed his receipt of the memorandum introducing the employment arbitration policy to company employees. Thereafter, Armstrong continued in his position as assistant general counsel. Citifinancial's notice, Armstrong's acknowledgment, and his continued employment effectively bind him to arbitrate this employment-related dispute. *See Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227, 229 (Tex. 1986) (holding that an employee who continued working after he was notified that his employment conditions would be modified by an arbitration policy was bound to arbitrate).

Similarly, on November 7, 2002, Armstrong once again signed an acknowledgment form attached to the Company's Employee Handbook, which explicitly referenced the requirement to arbitrate employment-related disputes. After this date, Armstrong continued working for Citifinancial. Just as above, this series of events–notice, acknowledgment, and continued employment–binds Armstrong to arbitrate his employment claims.

Armstrong raises a plethora of foreclosed arguments in an attempt to avoid compliance with the arbitration policy. First, Armstrong argues that he mistakenly signed the acknowledgment forms under the impression that the employment arbitration policy did not apply to Citifinancial employees. Under Texas law, however, the unilaterally mistaken party must bear responsibility for his error. *Wentwood Woodside I, LP v. GMAC Commercial Mortgage Corp.*, 419 F.3d 310, 316 (5th Cir. 2005). Second, Armstrong argues that the employment arbitration policy was not supported by sufficient consideration. Under Texas law, however, the contractual obligation for both parties to

5

arbitrate, as required by the policy contested in this appeal, is by definition sufficient consideration. *Halliburton*, 80 S.W.3d at 569-70.

Third, Armstrong argues that U.S. Consumer Group's reserved right to "revise, amend, modify, or discontinue the Policy at any time in its sole discretion" makes the agreement illusory. Pursuant to the arbitration policy, however, revisions or amendments cannot take effect until thirty days after notice to the employee. The Texas Supreme Court has upheld arbitration agreements with similar provisions. *Id.*(upholding a ten-day notice of termination provision); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 237 (Tex. 2003) (remanding case to lower court to determine if arbitration plan could be terminated without notice).

Fourth, Armstrong argues that Citifinancial fraudulently induced him to sign the employment arbitration agreement. Armstrong bases this assertion on the fact that Citifinancial terminated his position shortly after he acknowledged the policy for the second time. To prevail on the claim of fraudulent inducement, however, Armstrong must show that Citifinancial made material and false representations in order to induce his agreement. *In re FirstMerit Bank*, 52 S.W.3d 749, 758 (Tex. 2001); *Ernst & Young v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001). Armstrong presents no such evidence. Even assuming that Citifinancial knew his position would end soon, this alone does not support fraudulent inducement and Armstrong had already agreed to arbitrate employment-related disputes via the November 2001 acknowledgment form.

We find three other arguments raised in this appeal wholly without merit and either unsupported by case law or against the weight of settled law. Armstrong argues that the human resources department of Citifinancial lacked authority from the board of directors to implement an employment arbitration policy. Armstrong presents no case law and, more importantly, we find no

6

case law to support this proposition. Armstrong further argues that the arbitration policy does not cover his claims; yet, the policy explicitly includes breach of contract, ERISA, and ADEA claims. Armstrong also argues that the American Arbitration Association, designated to preside over arbitrations commenced pursuant to the policy, is not neutral and favors the employers who pay their fees and may be a source of future business. Following the Supreme Court's lead, we "decline to indulge the presumption that parties in an arbitral body conducting a proceeding would be unable or unwilling to retain competent, conscientious and impartial arbitrators." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30 (1994) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 634 (1985)). As noted by the district court, "generalized attacks on arbitration are out of step with the federal policy favoring arbitration."

Finally, Armstrong faults the district court for not holding an evidentiary hearing and dismissing, as opposed to staying, the case. To briefly address these arguments, first, Armstrong never requested a hearing, and the district court is not required to conduct a hearing on this threshold determination. *See U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 145 (5th Cir. 2001). Armstrong contends that the facts were controverted as to whether he knowingly agreed to the employment arbitration policy based on his mistaken belief. As stated above, a unilateral mistake, as a matter of law, would not affect the outcome of this decision. Second, the Fifth Circuit encourages district courts to dismiss cases with nothing but arbitrable issues because staying the action serves no purpose. *Alford*, 975 F.2d at 1164. Accordingly, the district court did not err in not conducting an evidentiary hearing and dismissing the case after granting Citifinancial's motion to compel arbitration.

7

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's judgment.