# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 31, 2016

Lyle W. Cayce
Clerk

No. 14-20552

INTERNATIONAL ENERGY VENTURES MANAGEMENT, L.L.C.,

      Plaintiff - Appellant

v.

UNITED ENERGY GROUP, LIMITED; SEAN MUELLER,

      Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before WIENER, SOUTHWICK, and GRAVES, Circuit Judges.

WIENER, Circuit Judge:

*This panel originally issued an opinion in this case on August 21, 2015.[1]
We now withdraw that opinion in its entirety and substitute the following in its
place.*

Plaintiff-Appellant International Energy Ventures Management, L.L.C.
("IEVM") appeals the district court's (1) denial of its motion to remand,
(2) grant of a motion by Defendant-Appellee Sean Mueller ("Mueller") to
dismiss for failure to state a claim, and (3) grant of a motion by Defendant-

---

[1] *Int'l Energy Ventures Mgmt., LLC v. United Energy Grp., Ltd.*, 800 F.3d 143 (5th Cir.
2015).

No. 14-20552

Appellee United Energy Group, Limited ("UEG") for lack of personal jurisdiction and for insufficient service of process.

## I.

### FACTS & PROCEEDINGS

A.     FACTS

These facts are drawn from IEVM's allegations, which we must accept as true. In July 2010, BP announced that it wanted to sell its Pakistan subsidiaries and those subsidiaries' assets, which included oil and gas fields. IEVM had expertise regarding the assets in Pakistan, and one of its members mentioned the sale of those assets to Mueller, a broker and investment banker. Soon after, Mueller contacted BP, stating that IEVM had retained him and that it was interested in acquiring BP's assets in Pakistan. Using a slide presentation that IEVM created and he rebranded, Mueller approached investors. He told those investors, as well, that IEVM had retained him with regard to the acquisition of BP's assets.

An associate of Mueller translated the presentation into Chinese and presented it to UEG, a Chinese petroleum company. In September 2010, UEG sent a letter of interest, drafted by Mueller, to BP. The letter mentioned that IEVM was the expert that had introduced UEG to the sale. Through Mueller, UEG also sent IEVM a proposed compensation agreement for IEVM's services. Under the final agreement between IEVM and UEG, IEVM contracted to provide consulting services to UEG during its acquisition of BP's assets in Pakistan. In consideration, UEG contracted to pay IEVM $750,000 per year for its services and its expenses. Subsequently, in consideration for services not covered by the compensation agreement, UEG agreed to pay IEVM and Mueller a commission of six percent of the acquisition price of the assets and, in addition, agreed to employ IEVM's members after the acquisition.

2

No. 14-20552

In November 2010, Mueller informed IEVM that BP had accepted UEG's offer to acquire the assets for $775 million. In January 2011, UEG confirmed its agreement with IEVM. IEVM performed its obligations to UEG under the compensation agreement until September 2011, when the sale of the BP assets to UEG closed. Throughout the remainder of 2011, IEVM attempted to collect from UEG under their agreement. In March 2012, UEG requested that IEVM provide further services to UEG, but IEVM refused to do so unless UEG acknowledged that IEVM had not been paid and unless UEG indemnified IEVM for liability arising from its past services. UEG did so, and also paid IEVM for the services rendered after March 2012. It has not paid IEVM for services rendered before then or the six percent commission.

B.    PROCEEDINGS

IEVM sued UEG and Mueller in Texas court. IEVM's petition asserted causes of action for breach of contract, promissory estoppel, and quantum meruit. Its petition also asserted a cause of action for fraud "because [UEG and Mueller] never intended to pay IEVM its consulting fees or its finder's fee equity, and thereby deceived IEVM into working on the BP Pakistan project without compensation."

Mueller and UEG removed, asserting that Mueller had been improperly joined to defeat subject matter jurisdiction based on diversity. Mueller then moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and simultaneously, UEG moved to dismiss for lack of personal jurisdiction under Rule 12(b)(2) and for insufficient service of process under Rule 12(b)(5). Soon thereafter, IEVM moved to remand. IEVM also requested leave to amend its petition, but it did not attach a proposed amendment.

Without explanation, the district court denied IEVM's motion to remand in a one-page order. IEVM then moved to compel arbitration and to stay the

3

No. 14-20552

litigation. The district court initially granted the motion in another one-page order, but it later withdrew that order. It then granted both Mueller's and UEG's motions to dismiss. In so doing, it stated that Mueller "has 60 days to seek and effect proper service of process on UEG," before the dismissal would "become[ ] final."[2] IEVM timely filed its notice of appeal. Thereafter, IEVM filed a certificate of service in the district court and a motion to supplement the record on appeal, which was granted.

On appeal, IEVM challenges the district court's decisions to (1) deny IEVM's motion to remand, (2) grant Mueller's motion to dismiss for failure to state a claim, and (3) grant UEG's motion to dismiss for lack of personal jurisdiction. We consider these challenges sequentially.

## II.

### ANALYSIS

#### A.     DENIAL OF IEVM'S MOTION TO REMAND

In denying IEVM's motion to remand, the district court determined that IEVM had improperly joined Mueller for the purpose of defeating subject matter jurisdiction based on diversity.[3] In so doing, the district court explained: "There are no facts pled that tie Mueller to the dispute that [IEVM] asserts against UEG save his role with or in behalf of IEVM."[4] We review the denial of a motion to remand *de novo*.[5]

Under the federal removal statute, a civil action may be removed from a state court to a federal court on the basis of diversity. This is so because the

---

[2] *Int'l Energy Ventures Mgmt. LLC v. United Energy Grp., Ltd..*, No. 4:13-CV-2754, 2014 WL 3732821, at *3 (S.D. Tex. July 25, 2014).

[3] *Int'l Energy Ventures*, 2014 WL 3732821, at *2.

[4] *Id.*

[5] *Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 887 (5th Cir. 2014).

4

federal court has original subject matter jurisdiction over such cases.[6] The only caveat is that, when a properly joined defendant is a resident of the same state as the plaintiff, removal is improper.[7] In the instant action, UEG and Mueller removed the action on the basis that there was complete diversity of the parties because IEVM, a resident of Texas, sued UEG, a resident of Bermuda, and even though IEVM also sued Mueller, a resident of Texas, Mueller was improperly joined.

A defendant is improperly joined if the moving party establishes that (1) the plaintiff *has* stated a claim against a diverse defendant that he fraudulently alleges is nondiverse, or (2) the plaintiff *has not* stated a claim against a defendant that he properly alleges is nondiverse.[8] Because Mueller is, in fact, nondiverse, only the latter option is relevant. As the parties attempting to remove IEVM's action, UEG and Mueller have the burden of establishing that IEVM has failed to state a claim against Mueller.[9] In doing so, they must demonstrate "that there is no possibility of recovery by the plaintiff against [a nondiverse] defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against [a nondiverse] defendant."[10] At the heart of this appeal lies the parties' dispute whether, in determining if IEVM might recover against Mueller, we should analyze its claims under the Texas pleading standard or the federal pleading standard.

---

[6] *See* 28 U.S.C. § 1441(a).

[7] *See id.* § 1441(b)(2).

[8] *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc), *cert. denied* 544 U.S. 992 (2005) (internal quotation marks and citation omitted).

[9] *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007).

[10] *Smallwood*, 385 F.3d at 573.

No. 14-20552

### 1. THE APPLICABLE PLEADING STANDARD

When deciding whether a nondiverse defendant has been improperly joined because the plaintiff has failed to state a claim against him, the court must apply the analysis articulated in our *en banc* opinion in *Smallwood v. Illinois Central Railroad Co.*: [W]hether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant . . . ."[11] In *Smallwood*, we recognized that "[t]here ha[d] been some uncertainty over the proper means for predicting whether a plaintiff ha[d] a reasonable basis of recovery under state law."[12] The *Smallwood* opinion declared that "[a] court may resolve the issue in one of two ways," the first of which is at issue here: "The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant," elaborating that "if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder."[13] "[T]he focus of the inquiry must be on the joinder, not the merits of the plaintiff's case."[14]

It is well-established, of course, that the Rule 12(b)(6) analysis necessarily incorporates the *federal* pleading standard articulated in *Bell Atlantic Corp. v. Twombly*: "To pass muster under Rule 12(b)(6), [a] complaint must have contained 'enough facts to state a claim to relief that is plausible on its face.'"[15]

---

[11] *Id.* (internal quotation marks and citation omitted).

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Reece v. U.S. Bank Nat'l Ass'n*, 762 F.3d 422, 424 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (U.S. 2007)). This standard is derived from Federal Rule of Civil Procedure 8. *Twombly*, 550 U.S. at 557 ("The need at the pleading stage for

No. 14-20552

Despite this, several of our unpublished opinions have inadvertently confused, or perhaps merely overlooked, that directive of the *Smallwood* opinion by assuming that the state pleading standard governs. In the earliest of these unpublished decisions, *De La Hoya v. Coldwell Banker Mexico, Inc.*,[16] a post-*Smallwood* panel of this court did not actually adopt the Texas pleading standard as much as it conflated it with the federal standard.[17] After reciting both standards, the *De La Hoya* opinion applied both of "those liberal pleading standards" as if they were the same.[18]

In the next of these unpublished opinions, *Akerblom v. Ezra Holdings Ltd.*,[19] another panel of this court applied the Texas pleading standard, but without explaining its decision to do so. In the latest of these unpublished, post-*Smallwood* decisions, *Michels v. Safeco Insurance Co. of Indiana*,[20] yet another panel of this court, after reciting the need for the Rule 12(b)(6)-type analysis, nonetheless proclaimed: "[T]he district court correctly stated that it first had to examine whether the [plaintiffs] sufficiently pleaded a [claim] under the

---

allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'").

[16] 125 F. App'x 533 (5th Cir. 2005) (unpublished).

[17] *Id.* at 537 ("[W]e must determine whether what plaintiffs did plead was sufficient . . . . *See Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 438 (5th Cir. 2004) (stating that, under Rule 8(a), a complaint suffices if it gives the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests') (internal quotation marks omitted); *Penley v. Westbrook*, 146 S.W.3d 220, 232 (Tex. Ct. App.2004) ('Texas follows a 'fair notice' pleading standard, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant at trial.')").

[18] *Id.*

[19] 509 F. App'x 340 (5th Cir. 2013) (unpublished).

[20] 544 F. App'x 535 (5th Cir. 2013) (unpublished).

7

Texas fair notice pleading standard."[21] The *Michels* opinion supported this approach with a citation to the *Smallwood* opinion.

The *De La Hoya*, *Ackerblom*, and *Michels* opinions do not articulate any reason for applying the state pleading standard. To the extent that they hold the state pleading standard must be applied, we believe such a holding is neither consistent with our precedent in the *Smallwood* opinion nor, as unpublished decisions, do they constitute precedent. Yet, because they are inconsistent with our *Smallwood* opinion, they have also engendered confusion in our district courts. As one district court explained:

> [A]lthough the *Smallwood* court referenced "a Rule 12(b)(6) challenge" as a guideline for determining improper joinder, the Fifth Circuit has issued two subsequent unpublished opinions [*Akerblom* and *Michels*] holding that Texas' notice pleading standard—not the more particularized "plausible claim" standard articulated in cases analyzing Rule 12(b)(6)—is the appropriate standard of review for evaluating whether a plaintiff has fairly stated potentially viable claims against an in-state defendant.[22]

To add to the confusion, the *De La Hoya*, *Ackerblom*, and *Michels* opinions are inconsistent with many other unpublished, post-*Smallwood*

---

[21] *Id.* at 538.

[22] *King v. Jarrett*, No. A–15–CV–00491–LY–ML, 2015 WL 5794021, at *9 (W.D. Tex. Oct. 1, 2015); *see Holmes v. Acceptance Cas. Ins. Co.*, 942 F. Supp. 2d 637, 645 (E.D. Tex. 2013) ("Based on the court's research, the United States Court of Appeals for the Fifth Circuit has not resolved in a published decision the issue of whether to apply the federal 12(b)(6) standard or the more lenient Texas 'fair notice' standard when evaluating the sufficiency of factual allegations for the purpose of determining improper joinder. Nonetheless, in *Akerblom v. Ezra Holdings Ltd.*, an unpublished case, the appeals court applied Texas pleading standards in an analysis of improper joinder. District courts in Texas have differed regarding which standard to apply. It appears, however, that the majority of district courts which have addressed this issue favor application of the state pleading standard." (citations omitted)).

opinions, which apply the federal pleading standard.[23] To resolve this uncertainty, we merely reiterate *Smallwood*'s instruction.

Although the *Smallwood* opinion requires this, so do the principles underlying it. At bottom, the improper-joinder analysis in the context of removal and remand is solely about determining the *federal* court's jurisdiction. That is *it*. As state courts *never* consider the scope of such jurisdiction, this analysis applies to federal courts exclusively. When determining the scope of its own jurisdiction, a federal court does so without reference to state law, much less state law governing pleadings.[24]

Thus, in this context, defining the test for improper joinder must begin with the scope of diversity jurisdiction itself, to wit: If there is at least one nondiverse defendant, there is no federal diversity jurisdiction; if there is no nondiverse defendant, there is federal diversity jurisdiction. So, in a case that has been removed to federal court on the basis of diversity, the determinative question is whether—*under federal law*—a nondiverse defendant was improperly joined.

For the specific purposes of improper joinder, a nondiverse defendant has been improperly joined if the plaintiff has failed to state a claim against that defendant on which relief *may* be granted. Conversely, if the plaintiff has stated a claim against a nondiverse defendant on which relief *may* be granted, a federal court is without jurisdiction—more precisely, without *diversity*

---

[23] *See, e.g.*, *Trang v. Bean*, 600 F. App'x 191, 193 (5th Cir. 2015) (unpublished) (applying *Iqbal* and *Twombly*); *Rojas v. Wells Fargo Bank, N.A.*, 571 F. App'x 274, 277–78 (5th Cir. 2014) (unpublished) (applying *Twombly*); *Kemp v. CTL Distribution, Inc.*, 440 F. App'x 240, 247 (5th Cir. 2011) (unpublished) (applying *Twombly*).

[24] As discussed below, when determining the *merits* of a claim over which it has jurisdiction, the federal court does so with regard to state law when those claims arise under state law. Improper joinder is a matter of jurisdiction, not merits.

jurisdiction—over that claim and, by extension, over any claims. It follows, then, that if the plaintiff has proffered a claim against a nondiverse defendant on which the federal court *may not* grant relief, that court only has jurisdiction over claims asserted against the diverse defendants.[25] The federal court may not resolve the claim against a nondiverse defendant on the merits.

Our properly parsed precedent therefore requires that decisions about removal must be made on the basis of federal law, not state law. As we observed decades ago in *Paxton v. Weaver*, a court "need not decide niceties of [state] procedure, since although state substantive law determines the nature of rights and liabilities asserted, [removal] is a question of federal law."[26] Thus, "[f]ederal courts must apply [a] separate and independent test so as to carry out the intent to restrict removal."[27] *Paxton* concluded that "mak[ing] state procedural rules determinative would be to add undue confusion to a field that already 'luxuriates in a riotous uncertainty.'"[28] In its opinion in *Grubbs v. General Electric Credit Corp.*, the Supreme Court reiterated that "[w]hile, of course, [a state] is free to establish such rules of practice for her own courts as she chooses, the removal statutes and *decisions of this Court* are intended to

---

[25] As the claim or claims against the nondiverse defendant must be dismissed *without prejudice*, the plaintiff is not barred by *res judicata* from refiling those claims in state court if he so desires. But, if he does so, the state court is nevertheless free to make its own determination whether the plaintiff has stated claims on which relief may be granted. If the federal court were to apply the state pleading standard instead of its own, its decision that a plaintiff had not stated a claim on which relief may be granted would only constitute a holding as to its jurisdiction, not as to the merits of the claim. That said, it is not clear whether the state court would nevertheless defer to the federal court's determination. Of course, applying the federal pleading standard avoids any confusion and any possibility that the state court would defer to it.

[26] *Paxton v. Weaver*, 553 F.2d 936, 940–41 (5th Cir. 1977).

[27] *Id.*

[28] *Id.* (quoting *Harper v. Sonnabend*, 182 F. Supp. 594, 595 (S.D.N.Y.1960)).

have uniform nationwide application."[29] It stated that federal law "must be construed as setting up its own criteria, irrespective of local law, for determining in what instances suits are to be removed from the state to the federal courts."[30]

In fact, our pre-*Smallwood* opinions expressly required use of the federal, not a state, pleading standard when testing for improper joinder. (This background precedent, against which the dispute in *Smallwood* was decided, binds us because the *Smallwood* opinion did nothing to displace it.) In *Bobby Jones Garden Apartments, Inc. v. Suleski*, we held that, to determine whether "there [was] a reasonably good chance that [the state] would hold [the nondiverse defendant] to some liability,"[31] a federal court must "look to the original state court pleading" and "read it *through the Federal, not [state], lenses* of *Conley v. Gibson*."[32] The opinion then recited the "the fifty-year-old, frequently quoted *Conley v. Gibson* pleading standard for Rule 8."[33] After "[c]omparing the [state substantive law] with the *Conley* reading of [the] complaint," this court was "satisfied that a reasonable possibility exists" that

---

[29] *Grubbs v. Gen. Elec. Credit Corp.*, 405 U.S. 699, 705 (1972) (emphasis added).

[30] *Id.* (quoting *Shamrock Oil Corp. v. Sheets*, 313 U.S. 100, 104 (1941)).

[31] 391 F.2d 172, 177 (5th Cir. 1968).

[32] *Id.* (emphasis added) (citation omitted) (quoting *Conley v. Gibson*, 355 U.S. 41, 44 (1957) *abrogated by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *Crespo v. Coldwell Banker Mortg.*, 599 F. App'x 868, 873 (11th Cir. 2014) (unpublished) ("Although we apply state substantive law for purposes of the [improper] joinder rule, we must read the complaint through 'Federal, not [state], lenses.'"(quoting *Bobby Jones Garden Apartments, Inc.*, 391 F.2d at 177).

[33] 5 FED. PRAC. & PROC. CIV. § 1216 (3d ed.).

11

the plaintiff would be entitled to relief under the federal pleading standard in *Conley*.[34]

This reliance on *Conley* is determinative here. Although Rule 8 and—in specific circumstances—Rule 9 provide the statutory component of the federal pleading standard, Rule 12(b)(6) provides the one and only method for testing whether that standard has been met. Thus, the jurisprudential component of the standard has been developed in the context of the *Conley* opinion and others interpreting Rule 12(b)(6), not Rule 8 and 9. Accordingly, the so-called Rule 12(b)(6)-type analysis, which incorporates both components, is shorthand for the federal pleading standard itself. Although the *Conley* opinion verbalized this federal pleading standard (and this Rule 12(b)(6)-type analysis) as it existed at the time that the dispute in *Smallwood* was decided, that standard (or that analysis) has since been supplanted by the one promulgated by the Supreme Court in in the *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal* opinions.

As the *Iqbal* opinion explained, the decision in *Twombly* "was based on [the] interpretation and application of Rule 8,"[35] which "in turn governs the pleading standard 'in all civil actions and proceedings in the United States district courts.'"[36] Stated differently: "*Twombly* expounded the [federal] pleading standard for 'all civil actions . . . .'" [37] This truism is widely

---

[34] *Bobby Jones Garden Apartments, Inc.*, 391 F.2d at 178 (citing the heightened federal pleading standard in Federal Rule of Civil Procedure 9).

[35] *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009).

[36] *Id.* (quoting FED. R. CIV. P. 1).

[37] *Id.*

recognized.[38] The *Iqbal* opinion also reiterated that the federal pleading standard *is* the Rule 12(b)(6)-type analysis, observing that one of the "[t]wo working principles [that] underlie our decision in *Twombly*" is that "only a complaint that states a plausible claim for relief [under Rule 8] survives a motion to dismiss [under Rule 12(b)(6)] . . . ."[39]

The *Smallwood* opinion instructs us to apply the Rule 12(b)(6)-type analysis, which must mean the entirety of that analysis.[40] Because that analysis is inseparable from the federal pleading standard, this is an instruction to apply the federal pleading standard. Again, our precedent makes this clear. In *Travis v. Irby*, we considered whether to test a plaintiff's claim against a putative nondiverse defendant under (1) the federal pleading standard in *Conley* or (2) the improper-joinder standard that had been articulated, in many different ways, in our earlier opinions. The *Travis* opinion noted that the improper-joinder standard that our court had been using was not only identical to the federal pleading standard stated in *Conley* but was derived from it.[41] Perhaps most tellingly, neither *Travis* nor *Smallwood*

---

[38] 5 FED. PRAC. & PROC. CIV. § 1221 ("The requirements for pleading set forth in Federal Rule [of Civil Procedure] 8(a) apply to all actions in the federal courts.").

[39] *Iqbal*, 566 U.S. at 679.

[40] Even if we were to assume *arguendo* that we could pick and choose which parts of the Rule 12(b)(6)-type analysis we should use in the improper-joinder context, it is nowhere made clear how we would or could do that.

[41] *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003). *Travis* began by explaining that "[n]either our circuit nor other circuits have been clear in describing the [improper] joinder standard" and that "[t]he test has been stated by this court in various terms, even within the same opinion." *Id.* After conducting a comprehensive review of those myriad standards, *Travis* observed that "[o]ur cases have also noted the similarity of the test for [improper] joinder and the test for a Rule 12(b)(6) motion alleging failure to state a claim." *Id.* at 648. It then compared (1) the Rule 12(b)(6)-type analysis in *Conley* ("The court should not dismiss the claim unless the plaintiff would not be entitled to relief under *any set of facts* or *any possible theory* that he could prove consistent with the allegations in the complaint") to (2) the improper-joinder standard in this court's previous decisions ("After all disputed questions of

referenced, much less relied on, any state pleading standard. We simply cannot read these opinions as requiring that a state pleading standard be used in the Rule 12(b)(6)-type analysis, much less in lieu of it.[42]

Further still, the *Smallwood* opinion, read in its entirety, supports this. As discussed above, the opinion begins by noting that we had previously "recognized two ways to establish improper joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the nondiverse party in state court.'"[43] After quoting these two "ways," the *Smallwood* opinion then delivers the test to be used henceforth under the second "way":

> [W]e explained in *Travis v. Irby* that the test for [improper] joinder is whether the defendant has demonstrated that there is no possibility of recovery

---

fact and all ambiguities in the controlling state law are resolved in favor of the nonremoving party, the court determines whether that party has *any possibility of recovery* against the party whose joinder is questioned"). *Id.* (quotations marks omitted) (emphasis and alterations in original). The *Travis* panel determined that the improper-joinder standard "appears adopted from the Rule 12(b)(6) standard under which the central issue is whether, in the light most favorable to the plaintiff, the complaint states a *valid claim for relief.*" *Id.* (quotations omitted).

[42] Although the *Travis* opinion clarified that the federal pleading standard in the *Conley* opinion and the improper-joinder standard are one and the same, we do not read the *Travis* opinion as intending to replace the latter with the former. As a practical matter, it did not much matter—at least not until the federal pleading standard in the *Conley* opinion was supplanted by that in the *Twombly* and *Iqbal* opinions. If any ambiguity still remains, it can be resolved by considering whether our *Smallwood* opinion requires courts to apply the federal pleading standard itself—whatever it may be currently—or the distinct improper-joinder standard that the *Travis* opinion considered identical to the former federal pleading standard noted in the *Conley* opinion. Reading the *Smallwood* opinion in conjunction with the *Travis* opinion, we are convinced that *Smallwood* mandates that we apply the federal pleading standard as it currently exists. The *Smallwood* opinion plainly instructs us to conduct "a Rule 12(b)(6)-type analysis," not the Rule 12(b)(6)-type analysis *as contained in the* Conley *opinion*. As *Travis* explained, the improper-joinder standard that had been used by this court was derived from the federal pleading standard embodied in the Rule 12(b)(6)-type analysis. Read together, the *Travis* and *Smallwood* opinions clarify that those standards are the same.

[43] *Smallwood*, 385 F.3d at 573 (quoting *Travis*, 326 F.3d at 646–47).

> by the plaintiff against an in-state defendant, which stated differently *means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.* To reduce possible confusion, we adopt this phrasing of the required proof and reject all others, whether the others appear to describe the same standard or not.[44]

Again, as there is no "actual fraud" at issue here, we address only the second "way."

The *Smallwood* opinion states that a moving party must show "inability of the plaintiff *to establish a cause of action* against the nondiverse party *in state court*."[45] But this must not be read to imply that a state pleading standard applies. As a preliminary matter, this is quoted from the *Travis* opinion and is included merely as an illustration of this court's position that improper joinder might be proved in one of two "ways." There is nothing to indicate that, by including it, the *Smallwood* opinion meant for it to be the test for improper joinder under either of these "ways." To the contrary, the *Smallwood* opinion unequivocally announced its own test for improper joinder under the second "way" immediately thereafter.[46] It forcefully "adopt[ed] [its own] phrasing of the required proof and reject[ed] all others . . . ." in the very next sentence.[47] The *Smallwood* opinion's phrasing of the test does not include that "in state court" language from the *Travis* opinion. It merely provides: "[T]here is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[48] Our post-*Smallwood* decisions

---

[44] *Id.* (footnote omitted) (emphasis added).

[45] *Id.* (emphasis added).

[46] *Id.*

[47] *Id.*

[48] *Id.*

reflect this. For instance, our opinion in *McDonal v. Abbott Labs* quoted the opinion in *Travis* for the proposition that there are two "ways" in which there may be improper joinder[49] but went on to quote the *Smallwood* opinion, not the *Travis* opinion, for the test under the second "way."[50]

In concluding that a plaintiff has not stated a claim against a nondiverse defendant under a Rule 12(b)(6)-type analysis in this context, the federal court

---

[49] *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005) (quoting *Travis*, 326 F.3d at 647). Notably, *Smallwood* also restates these same alternatives.

[50] *Id.* ("Under this second prong, we examine 'whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.'" (quoting *Smallwood*, 385 F.3d at 573)).

Even if the *Smallwood* opinion had intended to adopt the quotation from the *Travis* opinion as the test for improper joinder under the second "way," it offers no guidance as to whether the federal or a state pleading standard should apply. It neither states that a federal court must consider the viability of the claim in state court *applying the state pleading standard*, nor that a federal court must consider the viability of such a claim in state court *applying the federal pleading standard*. The reference to "state court" merely means under state law. This simply acknowledges *Erie*'s division of labor between state substantive law and federal procedural law. The "law of a State that would be controlling in an action upon the same claim by the same parties *in a State court*" only applies in federal court if disregarding such a law would "significantly affect the result of a litigation." *Guar. Trust Co. of N.Y. v. York*, 326 U.S. 99, 109 (1945)(emphasis added). This language, which is very close to the "in state court" language from the *Travis* opinion quoted in the *Smallwood* opinion, merely provides that a state law—such as a state pleading standard—applies only if it is substantive.

In the typical diversity case, the federal court applies the federal pleading standard embodied in the Rule 12(b)(6)-type analysis to test the sufficiency of a plaintiff's state law claims. Even though the Rule 12(b)(6)-type analysis *might* have a substantive effect—that is, the claims against the defendant might be dismissed *with* prejudice—it is still a procedural law. In the context of improper joinder, however, application of the Rule 12(b)(6)-type analysis has *no* substantive effect. This is because any claim against an improperly joined nondiverse defendant must be dismissed *without* prejudice. Such an analysis only "provides an alternative forum for the adjudication of state-created rights, but it does not carry with it generation of rules of substantive law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 426 (1996). It changes the procedure, not the outcome. The plaintiff's state law claims against the diverse defendants will be resolved in federal court; if his state law claims against the nondiverse defendant are resolved at all, they will be resolved separately in state court.

decides only that it has jurisdiction over the plaintiff's claims against the diverse defendants—not that the plaintiff does not have a claim at all against the nondiverse defendant. This is because the federal court never has diversity jurisdiction over a claim against a nondiverse defendant. Nothing in our *Smallwood* opinion even approaches a clear statement that we should—much less must—apply the state pleading standard. This is made crystal clear by *Smallwood*'s unconditional directive to employ the Rule 12(b)(6)-type analysis, which is part and parcel with the federal pleading standard.[51]

Immediately after stating the test for improper joinder, *i.e.*, "that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant," *Smallwood* expressly specifies the required analysis for that test. *Smallwood*'s directive that "[a] court *may* conduct a Rule 12(b)(6)-type analysis" is not a mere suggestion or option. Taken in context, the *Smallwood* opinion's use of "may" is permissive to only an expressly limited extent:

> There has also been some uncertainty over the proper means for predicting whether a plaintiff has a reasonable basis of recovery under state law.[52] *A court may resolve the issue in one of two ways.* The court may [either] conduct a Rule 12(b)(6)-type analysis . . . [or], in its discretion, pierce the pleadings and conduct a summary inquiry.[53]

Certainly a court *may* choose to use either one of these two analyses, but it *must* use one and only one of them, not neither or both. Because the second

---

[51] *Smallwood*, 385 F.3d at 573 ("The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant.").

[52] Significantly, it uses the same phrasing it adopted above, not that which refers to a "cause of action" or "state court."

[53] *Id.* (emphasis added).

one—piercing the veil—is obviously inapplicable here, we *must* use the first. And overarching this truism is the realization that both tests are *federal* tests.

In resolving the dispute in *Smallwood*, we—*en banc*—unambiguously undertook to resolve the "uncertainty over the proper means for predicting whether a plaintiff has a reasonable basis of recovery under state law."[54] And, in fact, we did just that.

As subsequent opinions have noted, "this court's decision in *Smallwood* . . . resolv[ed] issues surrounding removal based on improper joinder" and "provides the procedural framework for deciding whether remand [is] required."[55] We have routinely relied on our *Smallwood* opinion as *the* authoritative source of our improper-joinder analysis. We have never suggested—much less held—that the analysis we offered there was dicta.[56]

---

[54] *Id.* at 571 ("Today we decide a narrow but not unimportant question regarding diversity jurisdiction in federal courts and the application of the doctrine of 'improper joinder.' This is the first time this Court en banc has addressed the issue of improper joinder, although a number of panels of this Court have previously addressed it." (footnote omitted)).

[55] *Holder v. Abbott Labs., Inc.*, 444 F.3d 383, 387 (5th Cir. 2006).

[56] *See, e.g.*, *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 401 (5th Cir. 2013) ("This Court's *en banc* opinion in *Smallwood* sets out a procedure for determining whether a nondiverse defendant was improperly joined."); *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011) (relying on *Smallwood* for the improper-joinder analysis); *In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 385 (5th Cir. 2009) (same); *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669–70 (5th Cir. 2007) (same); *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 283 (5th Cir. 2007) ("[I]nformed by our en banc holding in *Smallwood* . . . , we conclude that joinder was proper in this case." (footnote omitted)); *Rico v. Flores*, 481 F.3d 234, 239 (5th Cir. 2007) ("The test established by our circuit [in *Smallwood*] is 'whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.'" (quoting *Smallwood*, 385 F.3d at 573)); *Larroquette v. Cardinal Health 200, Inc.*, 466 F.3d 373, 376 (5th Cir. 2006) ("[W]e have recognized [in *Smallwood*] two tests for establishing improper joinder . . . ."); *Salazar v. Allstate Tex. Lloyd's, Inc.*, 455 F.3d 571, 574 (5th Cir. 2006) (relying on *Smallwood* for the improper-joinder analysis); *Holder v. Abbott Labs., Inc.*, 444 F.3d 383, 387 (5th Cir. 2006) ("This court's decision in *Smallwood* . . . resolv[ed] issues surrounding removal based on improper joinder . . . . The *Smallwood* decision provides the procedural framework for deciding whether remand was

No. 14-20552

And, because *Smallwood* requires us to use the Rule 12(b)(6)-type analysis, we have no choice but to apply the federal pleading standard embodied in that analysis.

Our precedent is clear: A federal court must apply the federal pleading standard. And there are good *practical* reasons for federal courts to use a federal test, chief among which is that our district courts are intimately familiar with that test. They are able to apply it uniformly, and we are able to review their applications of it uniformly. Conversely, identifying and applying the appropriate state pleading standard is not something that federal courts are accustomed to doing. At best, it is incredibly time consuming; at worst, there is good reason to think that federal courts might get it wrong (or apply it in name only, while actually applying the federal pleading standard with which we are familiar).[57] Significantly, by uniformly applying the federal pleading standard, we ensure that the scope of federal subject matter jurisdiction does not differ serendipitously from state to state and district to district, because of nothing more than an accident of geography. We will thus avoid any differences

---

required." (footnote omitted)); *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308-09 (5th Cir. 2005) ("[W]e . . . determine whether the magistrate judge's improper joinder inquiry in this case comports with our recent *en banc* decision in *Smallwood* . . . . Here, it is undisputed that [the plaintiffs] can satisfy a Rule 12(b)(6)-type inquiry . . . ."); *Hawthorne Land Co. v. Occidental Chem. Corp.*, 431 F.3d 221, 224 (5th Cir. 2005) ("Joinder is improper if 'there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant,' so that a plaintiff must be able to survive a hypothetical Rule 12(b)(6) challenge to the claim to effect remand." (quoting *Smallwood*, 485 F.3d at 573)); *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005) ("We recognize that the district court proceeded without the benefit of *Smallwood*'s clarification of the improper joinder doctrine. Therefore we proceed to discuss these thorny issues in the context of the circumstances presented to the district court, yet with the illumination of *Smallwood* and subsequent case law construing it."). And none of these published opinions appear to rely on or reference a state pleading standard.

[57] *Smallwood*, 385 F.3d at 574 (noting that the Rule 12(b)(6)-type analysis requires "a simple and quick exposure of the chances of the claim against the in-state defendant alleged to be improperly joined").

attributable to nothing more than the whim and fancy of the laws in our three states.

### 2. APPLYING THAT STANDARD

Having determined that the federal pleading standard is applicable, we must now measure IEVM's claims against Mueller under that standard to determine whether Mueller was improperly joined. Specifically, we must consider whether IEVM pleaded "enough facts to state a claim to relief that is plausible on its face."[58]

IEVM contends that it has stated the following causes of action against Mueller under Texas law: breach of contract, promissory estoppel, quantum meruit, and fraud. IEVM has not alleged that Mueller contracted with it; instead, IEVM has merely stated that Mueller held himself out to be retained by IEVM. Neither has IEVM alleged that Mueller was responsible for the compensation agreement by which UEG would pay IEVM or that Mueller would pay IEVM under that agreement. Instead, IEVM alleges only that Mueller sent UEG's proposed agreement to IEVM. Finally, IEVM alleges that it made efforts to recover from UEG, but makes no mention that it sought to recover from UEG. Given these allegations, we hold that IEVM's claims against Mueller do not survive a Rule 12(b)(6)-type analysis and, therefore, were not properly joined.

Specifically, a claim under Texas law for breach of contract is not stated because IEVM never alleges the existence of a contract between it and Mueller.[59] A claim against Mueller for promissory estoppel has not been stated

---

[58] *Twombly*, 550 U.S. at 570.

[59] *See B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.–Houston [1st Dist.] 2009, pet. denied) ("The essential elements of a breach of contract claim are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff;

because IEVM has not alleged that Mueller promised it anything, but instead alleged that Mueller relayed a promise to IEVM on behalf of UEG.[60] Likewise, a claim against Muller for quantum meruit has not been stated because the complaint does not assert that IEVM provided any valuable services to Mueller.[61] Last, a claim of fraud has not been stated.[62] IEVM alleges, in a conclusional manner, that "based on the foregoing IEVM alleges a cause of action for fraud because [UEG and Mueller] never intended to pay IEVM its consulting fees or its finder[']s fee equity, and thereby deceived IEVM into working on the BP Pakistan project without compensation." This is clearly not enough to meet the heightened federal pleading standard for fraud.[63] Accordingly, we affirm the district court's denial of IEVM's motion to remand because IEVM has not stated any claim against Mueller that survives a Rule 12(b)(6)-type analysis. In so doing, it effectively dismissed the claims against Mueller *without* prejudice.

B.    GRANT OF MUELLER'S MOTION TO DISMISS

When, as here, a court determines that a nondiverse party has been improperly joined to defeat diversity, that party *must* be dismissed without

---

(3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach.").

[60] *See English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983) ("The requisites of promissory estoppel are: (1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment.").

[61] *See Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) ("To recover under the doctrine of quantum meruit, a plaintiff must establish that: 1) valuable services and/or materials were furnished; 2) to the party sought to be charged, 3) which were accepted by the party sought to be charged, and 4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing, expected to be paid by the recipient.").

[62] *See Hayden*, 2011 WL 240388, at *7.

[63] *See* FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

prejudice. If subject matter jurisdiction is based on diversity, a court never has jurisdiction over a nondiverse party. "[T]he presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action."[64]

Therefore, as long as a nondiverse party remains joined, the *only* issue the court may consider is that of jurisdiction itself. This is because "a federal court *always* has jurisdiction to determine its own jurisdiction."[65] This limited authority permits the court to grant a motion to remand if a nondiverse party is properly joined. It also permits the court to deny such a motion if a party is improperly joined and, in so doing, to dismiss the party that has been improperly joined. But in each instance, "the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case."[66] In considering whether a nondiverse party was improperly joined under *Smallwood*, the court is *only* considering jurisdiction.

The *Smallwood* inquiry just considers whether the claims against the nondiverse party *would have* survived if jurisdiction were not a bar, not whether such claims *did* survive. If the claims *would not have* survived, *Smallwood* only instructs that a court not consider them in determining jurisdiction. If such claims *would have* survived, the *Smallwood* decision instructs us to consider them in determining jurisdiction. To repeat, the *Smallwood* inquiry—including its Rule 12(b)(6)-type analysis—is used to resolve the issue of jurisdiction, not merits.

---

[64] *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005).

[65] *United States v. Ruiz*, 536 U.S. 622, 622 (2002) (emphasis added).

[66] *Smallwood*, 385 F.3d at 573.

No. 14-20552

Thus, the only ground for dismissing any improperly joined, nondiverse party is lack of subject matter jurisdiction. (To dismiss on any other basis would require the presence of jurisdiction that does not exist.) The court has ample authority to dismiss for lack of jurisdiction under the Federal Rules of Civil Procedure,[67] which "apply to a civil action after it is removed from a state court."[68] Unlike the typical dismissal under Rule 12(b)(6), for instance, which "operates as an adjudication on the merits," a dismissal for lack of jurisdiction under Rule 12(b)(1), for instance, does not.[69] Therefore, the dismissal of a nondiverse party over whom the court does not have jurisdiction must be a dismissal *without* prejudice in every instance.

After denying IEVM's motion to remand (on the basis that Mueller was improperly joined), the district court nonetheless granted Mueller's Rule 12(b)(6) motion to dismiss, which "operate[d] as an adjudication on the merits."[70] As we have discussed, the district court did not have jurisdiction to do so. As discussed above, once it determined that Mueller was improperly joined, the district court effectively dismissed IEVM's claims against him *without* prejudice. We therefore remand to the district court with instructions to vacate its grant of Mueller's motion to dismiss his claims *with* prejudice: That motion should have been denied as moot.

---

[67] FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); FED. R. CIV. P. 12(b)(1) ("[A] party may assert the following defenses by motion: . . . lack of subject-matter jurisdiction."). The court also has ample authority to sever or drop the claims against a party. *See* FED. R. CIV. P. 21.

[68] FED. R. CIV. P. 81(c)(1).

[69] FED. R. CIV. P. 41(b) ("[A] dismissal under [Rule 41(b)] and any dismissal not under [Rule 41]—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.").

[70] FED. R. CIV. P. 41(b).

No. 14-20552

C.    GRANT OF UEG'S MOTION TO DISMISS

IEVM brought the instant action to recover payment allegedly owed under an unwritten agreement that UEG would pay IEVM for its consulting services on the BP deal. However, after that deal closed, IEVM performed services for UEG under a supplemental agreement. In that agreement, UEG acknowledged IEVM's previous services and that UEG had not yet paid IEVM for those services. The supplemental agreement also indicates that, since the BP deal closed, "UEG ha[d] reason to believe the reserves associated with such properties are significantly less than what it had believed them to be[.]" In consideration for further IEVM services, UEG agreed to pay IEVM as outlined in the supplemental agreement. It also agreed to release IEVM from, and indemnify it for, any liability arising out of the BP deal. The supplemental agreement stated that it was governed by Texas law and that any controversies would be settled by arbitration in Texas. It included a merger clause, but noted that it "does not supersede, but is a supplement to, the agreement with respect to the prior work completed by [IEVM] for UEG."

IEVM advances two distinct reasons that the district court had personal jurisdiction over UEG. IEVM first contends that the supplemental agreement extends to the original, unwritten agreement between it and UEG, and that its arbitration provision therefore signifies implied consent to jurisdiction in Texas for any cause of action related to the former agreement. And, second, IEVM asserts that UEG has sufficient contacts with Texas that personal jurisdiction over UEG would comport with traditional notions of fair play and substantial justice. The district court addressed only the first of IEVM's arguments and determined that the supplemental agreement did not act as a

24

waiver of personal jurisdiction as to claims arising from the earlier agreement.[71]

As a preliminary matter, "[a] district court's dismissal of a suit for lack of personal jurisdiction where the facts are not disputed is a question of law, which is reviewed *de novo*."[72] The plaintiff has the burden of establishing that the court has personal jurisdiction.[73] When, as here, the district court does not search beyond the pleadings, "that burden requires only that the [plaintiff] make a *prima facie* showing."[74] "We must accept the plaintiff's uncontroverted allegations, and resolve in his favor all conflicts between the facts contained in the parties' affidavits and other documentation."[75]

We begin by considering whether the arbitration clause in the supplemental agreement applies to the parties' original, unwritten agreement and, if so, whether it confers personal jurisdiction. "Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was

---

[71] *See Int'l Energy Ventures*, 2014 WL 3732821, at *3 ("While the agreement acknowledged that past services had been provided by IEVM, for which IEVM had not been paid, it does not establish Texas as the forum for litigating claims for past services. This is so because, although UEG acknowledged by agreement a past debt due IEVM, it does not promise to pay the debt. There is no agreement to pay, therefore, reference in the agreement to Texas law as the governing law, arbitration and a Texas forum, do not apply to past services.").

[72] *Herman v. Cataphora, Inc.*, 730 F.3d 460, 464 (5th Cir. 2013).

[73] *Id.* The plaintiff has the burden of demonstrating specific jurisdiction for each claim asserted against the nonresident defendant. *Dontos v. Vendomation NZ Ltd.*, 582 F. App'x 338, 342 (5th Cir. 2014) (unpublished) (per curiam). Because IEVM bases all of its claims on identical factual allegations, we perform a singular, joint analysis.

[74] *Id.*

[75] *Monkton Ins. Servs. Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014) (quoting *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002)) (internal quotation marks omitted).

entered."[76] "A contract is unambiguous if it can be given a definite or certain legal meaning."[77] We need not decide, however, whether the plain language of the supplemental agreement indicates that it is a supplement to the original unwritten, agreement because we hold that, even assuming it does so indicate, there was no consent.

In setting forth its argument to the contrary, IEVM analogizes an arbitration clause to a forum-selection clause.[78] UEG counters that an arbitration clause renders jurisdiction to the court for the *limited* purpose of compelling arbitration. We agree. "When a party agrees to arbitrate in a particular state, via explicit or implicit consent, the district courts of the agreed-upon state may exercise personal jurisdiction over the parties for the limited purpose of compelling arbitration."[79] Thus, UEG's agreement to arbitrate in Texas does not necessarily constitute consent to the personal jurisdiction of Texas courts to adjudicate its claims in the first instance.

Nevertheless, the district court could possibly have had personal jurisdiction over UEG by virtue of the ordinary personal jurisdiction analysis. "A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant, and (2) the exercise of personal jurisdiction comports with

---

[76] *Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (per curiam).

[77] *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003).

[78] *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 & n.14 (1985) (noting that personal jurisdiction may be waived by forum selection clauses that are "freely negotiated" and are not "unreasonable and unjust" (internal quotation marks and citation omitted)).

[79] *Armstrong v. Assocs. Int'l Holdings Corp.*, 242 F. App'x 955, 957 (5th Cir. 2007) (unpublished) (per curiam); *see also Encompass Power Servs. v. Eng'g & Constr. Co.*, 224 F. App'x 329, 331 (5th Cir. 2007) (unpublished) (per curiam).

the [d]ue [p]rocess clause of the Fourteenth Amendment."[80] Because the Texas long-arm statute extends as far as constitutional due process permits, we simply need to determine whether a suit in Texas is consistent with the due process clause of the Fourteenth Amendment.[81]

The due process clause requires that a court exercise personal jurisdiction over a nonresident defendant only if the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."[82] The court may assert specific personal jurisdiction[83] over a nonresident defendant whose contacts with the forum state are singular or sporadic only *if* the cause of action asserted arises out of or is related to those contacts.[84] Conversely, there are not sufficient contacts with a forum state "when [the defendant] does not have a physical presence in the state; it did not conduct business in the state; and the contract underlying the business transaction at issue in the lawsuit was not signed in the state and did not call for performance in the state."[85] This inquiry "focuses on the relationship among the defendant, the forum, and the litigation."[86] In other words, personal jurisdiction is proper only

---

[80] *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009).

[81] *Pervasive Software, Inc. v. Lexware GMBH & Co. KG*, 688 F.3d 214, 220 (5th Cir. 2012).

[82] *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

[83] IEVM does not assert that the court has general personal jurisdiction over UEG; and therefore, we do not perform a general jurisdiction analysis. The court may have general jurisdiction over a nonresident defendant where the defendant's business contacts with the forum state are continuous and systematic. *McFadin*, 587 F.3d at 759.

[84] *McFadin*, 587 F.3d at 759; *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014).

[85] *Monkton*, 768 F.3d at 433.

[86] *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (internal quotation and citations omitted).

when the relationship arises "out of contacts that the defendant . . . creates with the forum state," and not the defendant's contacts with the plaintiff or third parties.[87]

IEVM argues that there is personal jurisdiction because (1) UEG hired agents in Texas, including IEVM, (2) UEG principals traveled to Texas to close the BP deal, and (3) UEG entered into an agreement with IEVM that includes a Texas choice-of-law clause. These contacts, however, are not related to this action. The contacts arose from UEG's acquisition of BP's assets and are therefore unrelated to "the relationship among the [UEG], the forum, and the litigation" over the unwritten, original agreement between UEG and IEVM.[88]

UEG had no presence in Texas as a result of the unwritten, original agreement because (1) UEG did not negotiate the agreement in Texas, (2) UEG did not travel to Texas because of that agreement, and (3) the unwritten agreement did not require performance in Texas. Instead, the unwritten, original agreement was between Chinese and Texas entities regarding services performed in Pakistan. That IEVM happened to provide those consulting services from Texas is not sufficient to establish jurisdiction.[89]

The unwritten, original agreement is not sufficient to subject UEG to jurisdiction in Texas. IEVM has failed to show that UEG had minimum contacts with Texas stemming from the unwritten, original agreement. Accordingly, we affirm the district court's grant of UEG's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2).

---

[87] *Id.* at 1122 (internal quotation and citations omitted).

[88] *Id.* at 1121 (internal quotation and citations omitted).

[89] *E.g., Montcrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007) ("a plaintiff's unilateral activities in Texas do not constitute minimum contacts where the defendant did not perform any of its obligations in Texas, the contract did not require performance in Texas, and the contract is centered outside of Texas").

No. 14-20552

## III.

### CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of IEVM's motion to remand and the grant of UEG's motion to dismiss for lack of jurisdiction, and REMAND to the district court with instructions to VACATE its grant of Mueller's motion to dismiss for failure to state a claim. Because the court lacks subject matter jurisdiction over Mueller and personal jurisdiction over UEG, each of the claims must be dismissed *without* prejudice.