ALIA MOSES, United States District Judge
Pending before the Court is the Report and Recommendation of the Honorable Victor R. Garcia, United States Magistrate Judge, filed February 1, 2019. (ECF No. 42.) In the report, Judge Garcia recommends that the Plaintiffs' Motion to Remand to State Court (ECF No. 19) be GRANTED and the Pharmaceutical Defendants' Motion to Dismiss (ECF No. 7)[1] be DENIED for lack of jurisdiction. This Report and Recommendation will be ADOPTED.
I. BACKGROUND
This litigation arises from the death of Juan Humberto Martinez. According to the Plaintiffs' Amended Original Petition, the live pleading, Martinez sought medical treatment on April 19, 2016, for pain he experienced in his buttocks after he attempted to lift a heavy object at work. (See ECF No. 1-1.) His pain was initially treated with Tylenol and muscle relaxers. When Martinez's pain did not improve, he was given intramuscular injections of the drug Toradol beginning on April 30, 2016. (Id. ) Martinez developed a muscular abscess, infections, and sepsis, and suffered renal failure which resulted in his death on May 30, 2016. (Id. at 6.)
Following Martinez's death, the Plaintiffs, individually and as representatives of Martinez's estate, filed suit against the Defendants in the 293rd Judicial District Court of Maverick County, Texas. (Id. at 1.) The Plaintiffs assert a cause of action for negligence against the Defendants Lewis S. Christian, M.D., Denise V. Nemeth, P.A., Alejandro Maldonado, and their employer, South Texas Urgent Care Center of Eagle Pass, LLC d/b/a South Texas Urgent Care Center ("South Texas Urgent Care"), and further claim that South Texas Urgent Care bears vicarious liability for its employees' negligence. (Id. at 53-56.) The Plaintiffs assert a negligence cause of action against the Defendants Patrick Schaner, M.D., Russell Jones, N.P., Gabriel Martinez, R.N., and their employer, Fort Duncan Regional Medical Center, L.P. d/b/a Fort Duncan Regional Medical Center ("Fort Duncan"), and further claim that Fort Duncan bears vicarious liability for its employees' negligence. (Id. at 56-59.) The Court will refer to the aforementioned defendants collectively as the *758 "Healthcare Defendants." Against the Defendants Pfizer, Inc., Hospira Inc., Hospira Worldwide, Inc., and Hospira Worldwide, LLC, collectively the "Pharmaceutical Defendants," the Plaintiffs assert causes of action for: (1) negligence; (2) fraud and negligent misrepresentation; (3) negligence per se; (4) failure to update labeling; (5) intentional misrepresentation; (6) concealment; (7) design and manufacturing defects; and (8) failure to provide medication guide. (Id. at 27-53.) The Plaintiffs claim that all the Defendants were grossly negligent and seek wrongful death and survival damages as well as punitive damages for wrongful death and survival along with interest and costs. (Id. at 59-64.)
On June 18, 2018, the Pharmaceutical Defendants removed this suit based upon the claim that federal jurisdiction over this suit exists because there is a sufficient amount in controversy and complete diversity of citizenship among the parties because the Healthcare Defendants are improperly joined, fraudulently misjoined, and discretionarily severable, meaning that their non-diverse state citizenship may be disregarded. (See ECF No. 1 at ¶ 28-40.) Simultaneous with the removal, the Pharmaceutical Defendants filed a motion to dismiss for failure to state a claim and alternative motion for a more definite statement. (ECF No. 7.) Thereafter, the Plaintiffs filed a motion to remand arguing that a remand is required because federal diversity jurisdiction over this action does not exist since the Healthcare Defendants are properly joined, non-diverse defendants. (ECF No. 19.) Judge Garcia filed a Report and no party filed objections.
II. LEGAL STANDARD
The Court need not conduct a de novo review of the pending matter because no party filed objections to the Report and Recommendation. Rather, the Court need only review the report and recommendation to determine whether it is erroneous or clearly contrary to law. Douglass v. United Servs. Auto. Ass'n. , 79 F.3d 1415, 1429 (5th Cir. 1996) ; United States v. Wilson , 864 F.2d 1219, 1221 (5th Cir. 1989).
III. DISCUSSION
In the present matter, Judge Garcia's findings and conclusions are neither erroneous nor contrary to law. Title 28 U.S.C. § 1332(a) provides that federal district courts have original jurisdiction over civil actions where the amount in controversy exceeds $75,000,[2] and the suit is "between [ ] Citizens of different States." 28 U.S.C. § 1332(a)(1) (2012). For diversity jurisdiction to be proper, the "court must be certain that all plaintiffs have a different citizenship from all defendants." Getty Oil Corp., a Div. of Texaco, Inc. v. Insur. Co. of N.A. , 841 F.2d 1254, 1258 (5th Cir. 1988) (citing Strawbridge v. Curtiss , 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806) ). The improper joinder doctrine is a "narrow exception" to the complete diversity requirement and permits a court to disregard the state citizenship of an improperly joined, non-diverse defendant. McDonal v. Abbott Labs. , 408 F.3d 177, 183 (5th Cir. 2005). "The removing party bears the burden of establishing that federal jurisdiction exists." De Aguilar v. Boeing Co. , 47 F.3d 1404, 1408 (5th Cir. 1995). Here, the Pharmaceutical Defendants have not met that burden.
First, complete diversity does not exist. The Plaintiffs are citizens of Texas. All the Healthcare Defendants are citizens of Texas. (ECF No. 1-1 at 6-7.) The Pharmaceutical *759 Defendants are citizens of Delaware, New York, and Illinois. (Id. ) Unless there is a finding that each and every Healthcare Defendant was improperly joined, complete diversity jurisdiction does not exist, and therefore this Court does not have jurisdiction over this suit.
The removing defendant can establish improper joinder in two ways: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Smallwood v. Ill. Cent. R.R. Co. , 385 F.3d 568, 573 (5th Cir. 2004). The Pharmaceutical Defendants are not alleging actual fraud, so the Court need only assess whether the Plaintiffs failed to establish a cause of action against each and every Healthcare Defendant. After reviewing Judge Garcia's thorough analysis, this Court agrees that the Plaintiffs have clearly alleged a specific cause of action against at least one of the non-diverse defendants-the Healthcare Defendants. Based on the details of Martinez's treatment and ultimate death, the Plaintiffs have clearly laid out a negligence cause of action under the Texas Medical Liability Act against at least one of the Healthcare Defendants.
In the alternative, the Pharmaceutical Defendants argue that the Healthcare Defendants have been fraudulently misjoined or that the claims against them should be severed from those against the Pharmaceutical Defendants. The Court is not convinced. For any of the claims against any Healthcare Defendant to be fraudulently misjoined, first the Court looks to whether the claims are joined appropriately under state law. Then, only if it concludes that joinder is inappropriate, the Court determines whether the joinder is fraudulent. In Texas, defendants may be joined if: (1) "there is asserted against them jointly, severally, or in the alternative any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences" and (2) at least "one question of law or fact common to all of them will arise in the action." TEX. R. CIV. P. 40(a). The Plaintiffs' negligence claims against the Healthcare Defendants arise out of the same transaction or occurrence as their products liability claims against the Pharmaceutical Defendants, specifically when examining the administration and prescription of the drug Toradol on Martinez. Finally, the Court does not find severing the claims against the Pharmaceutical Defendants and the Healthcare Defendants to be appropriate or efficient and therefore, declines to do so. Since the Pharmaceutical Defendants have failed to show that this Court has jurisdiction because the Healthcare Defendants have been improperly or fraudulently joined, the Court will not take the extreme step of severing the claims, as the Supreme Court has said to use this power "sparingly." Newman-Green, Inc. v. Alfonzo-Larrain , 490 U.S. 826, 837, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989) ; see also FED. R. CIV. P. 20 & 21. The Court finds that the Pharmaceutical Defendants have not put forward any reason why the Healthcare Defendants' non-diverse citizenship should be disregarded. Complete diversity does not exist and thus, this Court has no jurisdiction over this matter.
IV. CONCLUSION
Accordingly, it is hereby ORDERED that the Report and Recommendation (ECF No. 42) prepared by Judge Garcia in the instant case is APPROVED and ADOPTED. Therefore, it is ORDERED that the Plaintiffs' Motion to Remand to State Court (ECF No. 19) is GRANTED. It is FURTHER ORDERED that the Pharmaceutical Defendants' Motion to Dismiss *760 for Failure to State a Claim (ECF No. 7) is DENIED.
REPORT AND RECOMMENDATION
VICTOR ROBERTO GARCÍA, UNITED STATES MAGISTRATE JUDGE
TO THE HONORABLE ALIA MOSES, UNITED STATES DISTRICT JUDGE:
The Court referred the above-captioned matter to the undersigned for initial proceedings consistent with 28 U.S.C. § 636(b). Plaintiffs Christian Martinez and Sandra Saucedo have filed a motion to remand to which Defendants have responded and Defendants Pfizer, Inc., Hospira, Inc., Hospira Worldwide, Inc., and Hospira Worldwide, LLC filed a motion to dismiss to which Plaintiffs have responded. For the following reasons, it is recommended that Plaintiffs' motion to remand [ECF No. 19] be GRANTED and that Defendants' motion to dismiss [ECF No. 7] be DENIED.
I. BACKGROUND
This litigation arises from the death of Juan Humberto Martinez. According to Plaintiffs Amended Original Petition, the live pleading, Martinez sought medical treatment on April 19, 2016, for pain he experienced in his buttocks after he attempted to lift a heavy object at work. (See Pls.' Am. Orig. Pet. 5 attached to Not. of Removal as Ex. A, ECF No. 1-1.) His pain was initially treated with Tylenol and muscle relaxers. When Martinez's pain did not improve, he was given intramuscular injections of the drug Toradol beginning on April 30, 2016. (Id. ) Martinez developed a muscular abscess, infections, and sepsis, and suffered renal failure which resulted in his death on May 30, 2016. (Id. at 6.)
Following Martinez's death, Plaintiffs, individually and as representatives of Martinez's estate, filed suit against Defendants in the 293rd Judicial District Court of Maverick County, Texas. (Id. at 1.) Plaintiffs assert a cause of action for negligence against Defendants Lewis Christian, M.D., Denise V. Nemeth, P.A., Alejandro Maldonado, and their employer, South Texas Urgent Care Center of Eagle Pass, LLC d/b/a South Texas Urgent Care Center, ("South Texas Urgent Care") and further claim that South Texas Urgent Care bears vicarious liability for its employees' negligence. (Id. at 53-56.) Plaintiffs assert a negligence cause of action against Defendants Patrick Schaner, M.D., Russell Jones, N.P., Gabriel Martinez, R.N., and their employer, Fort Duncan Regional Medical Center, L.P. d/b/a Fort Duncan Regional Medical Center ("Fort Duncan"), and further claim that Fort Duncan bears vicarious liability for its employees' negligence. (Id. at 56-59.) The undersigned will refer to the aforementioned Defendants collectively as the "Healthcare Defendants." Against Defendants Pfizer, Inc., Hospira, Inc., Hospira Worldwide, Inc., and Hospira Worldwide, LLC, collectively the "Pharmaceutical Defendants," Plaintiffs assert causes of action for: (1) negligence, (2) fraud and negligent misrepresentation, (3) negligence per se, (4) failure to update labeling, (5) intentional misrepresentation, (6) concealment, (7) design and manufacturing defects, and (8) failure to provide medication guide. (Id. at 27-53.) Plaintiffs claim that all of the Defendants were grossly negligent, and seek wrongful death and survival damages as well as punitive damages for wrongful death and survival along with interest and costs. (Id. at 59-64.)
On June 18, 2018, the Pharmaceutical Defendants removed this suit based upon their claim that federal jurisdiction over this suit exists because there is a sufficient amount in controversy and *761 complete diversity of citizenship among the parties because the Healthcare Defendants are improperly joined,[1] fraudulently misjoined, and discretionarily severable, meaning that their non-diverse state citizenship may be disregarded. (See Not. of Removal, paras. 28-40, ECF No. 1.) Simultaneous with the removal, the Pharmaceutical Defendants filed a motion to dismiss for failure to state a claim and alternative motion for a more definite statement. (Defs.' Mot. to Dism. 1, ECF No. 7.) Thereafter, Plaintiffs filed a motion to remand arguing that a remand is required because federal diversity jurisdiction over this action does not exist since the Healthcare Defendants are properly joined, non-diverse defendants. (See Pls.' Mot. to Remand 4-15, ECF No. 19.) The parties have responded and replied to the pending motions and the briefing is now closed, making the motions ripe for disposition. See W.D. Tex. Local Rule CV-7(e). The District Court must assure itself of jurisdiction over a removed suit before considering any substantive arguments pertaining to the merits of the claims, see Int'l Engery Ventures Mgmt., LLC v. United Energy Grp., Ltd. , 818 F.3d 193, 210 (5th Cir. 2016), and so the undersigned begins the evaluation of the pending motions with Plaintiff's motion to remand.
II. DISCUSSION
To contest a removal, a plaintiff may file a motion to remand. See 28 U.S.C. § 1447(c). In evaluating a motion to remand, courts should bear in mind that "removal statutes are to be construed strictly against removal and for remand." Eastus v. Blue Bell Creameries, L.P. , 97 F.3d 100, 106 (5th Cir. 1996). Further, because jurisdiction is fixed at the time of removal, the jurisdictional facts supporting removal are examined as of the time of removal. Gebbia v. Wal-Mart Stores, Inc. , 233 F.3d 880, 883 (5th Cir. 2000). The burden to show that federal jurisdiction exists and that removal is proper lies with the removing party. De Aguilar v. Boeing Co. , 47 F.3d 1404, 1408 (5th Cir. 1995).
Title 28 U.S.C. § 1332(a) provides federal district courts with original diversity jurisdiction over civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the dispute is "between [ ] Citizens of different States." 28 U.S.C. § 1332(a)(1). "Between Citizens of different States" means the parties to the action must be completely diverse: "[a] district court cannot exercise diversity jurisdiction if one of the plaintiffs shares the same state citizenship as any one of the defendants." Corfield v. Dallas Glen Hills LP , 355 F.3d 853, 857 (5th Cir. 2003). The improper joinder doctrine is a "narrow exception" to the complete diversity requirement and permits a court to disregard the state citizenship of an improperly joined, non-diverse defendant. McDonal v. Abbott Labs. , 408 F.3d 177, 183 (5th Cir. 2005).
A defendant may remove a "civil action brought in a State court" on the basis of § 1332 diversity jurisdiction so long as none "of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(a) - (b). When a suit is removed based upon a claim of diversity jurisdiction, the diversity jurisdiction must exist at the time of removal.
*762 See Caterpillar Inc. v. Lewis , 519 U.S. 61, 73, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996) (noting that § 1441(a) requires "that the case be fit for federal adjudication at the time the removal petition is filed. "); Engler v. Winfrey , 201 F.3d 680, 686 (5th Cir. 2000) (per curiam). The burden to establish complete diversity and a sufficient amount in controversy lies with the defendant invoking federal diversity jurisdiction. See Garcia v. Koch Oil Co. of Tex., Inc. , 351 F.3d 636, 638-39 (5th Cir. 2003). A district court is obligated to remand an action removed on the purported basis of diversity jurisdiction if the removing defendant does not carry this burden. See 28 U.S.C. § 1447(c).
A. Amount in Controversy
The amount in controversy is determined at the time of removal. Gebbia , 233 F.3d at 883. In St. Paul Mercury Indemnity Company v. Red Cab Company , the Supreme Court delineated the general rule for determining the amount in controversy: "unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938) (footnotes omitted); accord De Aguilar v. Boeing Co. , 47 F.3d 1404, 1408 (5th Cir. 1995). Plaintiffs plead specifically in the petition that they seek monetary relief of at least $1 million. (Pls.' Am. Orig. Pet. 61.) There is no indication that this sum is claimed in bad faith and it therefore satisfies the amount in controversy threshold for federal diversity jurisdiction.
B. Diversity of Citizenship
Title 28 U.S.C. § 1332(a) provides federal district courts with original diversity jurisdiction over civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the dispute is "between [ ] Citizens of different States." 28 U.S.C. § 1332(a)(1). "Between Citizens of different States" means the parties to the action must be completely diverse: "[a] district court cannot exercise diversity jurisdiction if one of the plaintiffs shares the same state citizenship as any one of the defendants." Corfield v. Dallas Glen Hills LP , 355 F.3d 853, 857 (5th Cir. 2003). The improper joinder doctrine is a "narrow exception" to the complete diversity requirement and permits a court to disregard the state citizenship of an improperly joined, non-diverse defendant. McDonal v. Abbott Labs. , 408 F.3d 177, 183 (5th Cir. 2005). Similarly, the fraudulent misjoinder of a non-diverse defendant may serve as an additional basis for concluding that the defendant is improperly joined. Tapscott v. MS Dealer Service Corp. , 77 F.3d 1353, 1360 (11th Cir. 1996), abrogated in part on other grounds by Cohen v. Office Depot , 204 F.3d 1069 (11th Cir. 2000). The Federal Rules of Civil Procedure also contain provisions concerning the appropriate joinder of parties and claims in a single suit, see Fed. R. Civ. P. 18 - 21, and in certain circumstances, a court may exercise discretion to sever claims against a non-diverse parties to cure a defect in diversity jurisdiction. See, e.g. , Newman-Green, Inc. v. Alfonzo-Larrain , 490 U.S. 826, 832-33, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989).
A defendant may remove a "civil action brought in a State court" on the basis of § 1332 diversity jurisdiction so long as none "of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(a) - (b). When a suit is removed based upon a claim of diversity jurisdiction, the diversity jurisdiction must exist at the time of removal. See Caterpillar Inc. v. Lewis , 519 U.S. 61, 73, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996) (noting that § 1441(a) requires "that the *763 case be fit for federal adjudication at the time the removal petition is filed. "); Engler v. Winfrey , 201 F.3d 680, 686 (5th Cir. 2000) (per curiam). The burden to establish complete diversity and a sufficient amount in controversy lies with the defendant invoking federal diversity jurisdiction. See Garcia v. Koch Oil Co. of Tex., Inc. , 351 F.3d 636, 638-39 (5th Cir. 2003). A district court is obligated to remand an action removed on the purported basis of diversity jurisdiction if the removing defendant does not carry this burden. See 28 U.S.C. § 1447(c).
1. Improper Joinder
In the petition, Plaintiffs identify themselves as "individual persons residing in Maverick County, Texas." (Pls.' Am. Orig. Pet. 2.) A natural person's citizenship lies in the state where the person is domiciled. See Preston v. Tenet Healthsystem Mem. Med. Ctr. , 485 F.3d 793, 797 (5th Cir. 2007). "Domicile requires the demonstration of two factors: residence and the intention to remain." Id. at 798. Judging from the submissions, it is apparent that the parties agree that Plaintiffs are Texas citizens and there is no reason to question whether Plaintiffs are domiciled in Texas and therefore also Texas citizens. (See Pls.' Am. Orig. Pet. 2; see also Not. of Removal para. 27.) The petition's allegations further indicate that Defendants Lewis Christian, Jr., M.D., Denise V. Nemeth, P.A., Patrick Schaner, M.D., Russel Jones, N.P., and Gabriel Martinez, R.N. also are natural persons who hold healthcare provider licenses to practice in Texas, suggesting they are domiciled in Texas and Texas citizens as represented in the Notice of Removal. (See Pls.' Am. Orig. Pet. 2-3; see also Not. of Removal paras. 20-21, 23-26.) The petition also states that Alejandro Maldonado is a natural person who resides in Texas, (Pls.' Am. Orig. Pet. 3), and he presumably is domiciled in Texas as well, and is a Texas citizen as the parties have assumed in their submissions.
As for the corporate Defendants, § 1332(c)(1) affixes the citizenship of a corporation in "every State and foreign state by which it has been incorporated and [in] the State or foreign state where it has its principal place of business ...." 28 U.S.C. § 1332(c)(1) ; see also Hertz Corp. v Friend , 559 U.S. 77, 83, 130 S.Ct. 1181, 175 L.Ed.2d 1029 (2010) (quotation omitted). The allegations demonstrate that Defendant Pfizer, Inc. is a Delaware corporation with its principal place of business in New York and thus a citizen of Delaware and New York, (Pls.' Am. Orig. Pet. 3; Not. of Removal para. 16), and that Defendants Hospira, Inc. and Hospira Worldwide, Inc.[2] are Delaware corporations with their principal places of business in Illinois. (Pls.' Am. Orig. Pet. 3; Not. of Removal paras. 17-18.)
The citizenship of other business entities, such as a partnership, limited liability company, or unincorporated association is determined by the citizenship of each member of the entity. Harvey v. Grey Wolf Drilling Co. , 542 F.3d 1077, 1079-80 (5th Cir. 2008). Defendant Hospira Worldwide, LLC is alleged in the petition to be a citizen of Delaware and Illinois, (Pls.' Am. Orig. Pet. 4), and it is represented in the Notice of Removal that Hospira Worldwide, LLC's sole member is Hospira, Inc., a Delaware corporation with its principal place of business in Illinois, and thus, as alleged, that Hospira Worldwide, LLC is a Delaware and Illinois citizen. (Not. of Removal *764 para. 18.) Defendant South Texas Urgent Care Center of Eagle Pass, LLC d/b/a South Texas Urgent Care Center is alleged to be a Texas corporation and Texas citizen, (Pls.' Am. Orig. Pet. 2), and according to the Notice of Removal, it is a Texas corporation with its principal place of business in Texas and therefore a citizen of Texas. (Not. of Rem. para. 19.) Plaintiffs allege in the petition that Fort Duncan Regional Medical Center, L.P. d/b/a Fort Duncan Regional Medical Center is a "foreign corporation doing business in" Texas, (Pls.' Am. Orig. Pet. 2), but the Notice of Removal asserts that it is a Texas corporation with its principal place of business in Texas and thus a Texas citizen. (Not. of Removal para. 22.) No information is given about Fort Duncan's membership, (see id. ), and Plaintiffs do not challenge the Notice of Removal's assertions regarding Fort Duncan's citizenship, but rather acknowledge in their motion to remand that Fort Duncan is a Texas citizen, (Pls.' Mot. to Remand 3, ECF No. 19), so it appears that Fort Duncan is a citizen of Texas for § 1332 purposes.
Taken together, the citizenship allegations demonstrate that the Plaintiffs are Texas citizens, the Pharmaceutical Defendants are citizens of Delaware, New York, and Illinois, and therefore diverse from Plaintiffs, and the Healthcare Defendants are non-diverse from Plaintiffs because they are all citizens of Texas. Absent a finding that each and every one of the Healthcare Defendants is an improperly joined defendant whose non-diverse Texas citizenship may be disregarded, diversity jurisdiction over this suit is lacking.
Where there are allegations of improper joinder, the removing defendant bears the "heavy" burden of proving that the joinder of any non-diverse defendant was improper. Griggs v. State Farm Lloyds , 181 F.3d 694, 701 (5th Cir. 1999). There are two ways to establish improper joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Smallwood v. Ill. Cent. R.R. Co. , 385 F.3d 568, 573 (5th Cir. 2004) (en banc) (quotation omitted). The Pharmaceutical Defendants do not contend that Plaintiffs engaged in actual fraud in the pleading of jurisdictional facts; only Plaintiffs' ability to establish a cause of action against the Healthcare Defendants in Texas state court is at issue. (See Not. of Removal paras. 4, 36-40.)
The inquiry into a plaintiff's ability to establish a cause of action against a non-diverse defendant focuses upon whether "there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." Smallwood , 385 F.3d at 573 (discussing holding of Travis v. Irby , 326 F.3d 644, 646-47 (5th Cir. 2003) ). This requires "a reasonable possibility of recovery, not merely a theoretical one." Campbell v. Stone Ins., Inc. , 509 F.3d 665, 669 (5th Cir. 2007) (quotation omitted) (emphasis in original); accord Kling Realty Co. v. Chevron U.S., Inc. , 575 F.3d 510, 513 (5th Cir. 2009). Improper joinder questions may be resolved using either of two methods. "The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant."[3] Smallwood , 385 F.3d at 573.
*765 Whether a plaintiff has stated a valid state law cause of action "depends upon and is tied to the factual fit between the plaintiffs' allegations and the pleaded theory of recovery." Griggs , 181 F.3d at 701 (quotation omitted). In making this legal determination, courts are "obliged to resolve any contested issues of material fact, and any ambiguity or uncertainty in the controlling state law" in the plaintiff's favor. Id. at 699. Alternatively, for cases "in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder ... the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." Smallwood , 385 F.3d at 573. In its summary inquiry, the court may consider "summary judgment-type evidence such as affidavits and deposition testimony" to review the claim of improper joinder. Griggs , 181 F.3d at 700 (quotation omitted). "Post-removal filings may not be considered, however, when or to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court." Id. "[A] summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude [the] plaintiff's recovery against the in-state defendant." Smallwood , 385 F.3d at 573-74. "In this inquiry the motive or purpose of the joinder of in-state defendants is not relevant," id. at 574, and courts should avoid "pretrying a case to determine removal jurisdiction ...." Griggs , 181 F.3d at 700 (quotation omitted).
To evaluate whether an in-state defendant has been improperly joined, the Fifth Circuit Court of Appeals instructs district courts to employ a "Rule 12(b)(6)-type" analysis, looking "at the allegations of the complaint to determine whether the complaint states a claim under state law" against the non-diverse defendant. Smallwood , 385 F.3d at 573. Because federal jurisdiction must exist at the time of removal, it is the allegations of the most recent pleading filed in state court that are examined to determine whether diversity jurisdiction exists. See, e.g. , Cavallini v. State Farm Mut. Auto Ins. Co. , 44 F.3d 256, 264 (5th Cir. 1995). Federal district courts evaluate the adequacy of claims against non-diverse defendants for improper joinder purposes by reference to federal pleading standards.[4]
*766 Int'l Energy Ventures Mgmt. , 818 F.3d at 208. To that end, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has explained that Rule 8(a)'s requirement of a short, plain statement of the grounds of entitlement to relief, "requires more than labels and conclusions," emphasizing that "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly , 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (abandoning the "no set of facts" standard of Conley v. Gibson , 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ). Instead, the Court has admonished that, "[f]actual allegations must be enough to raise a right to relief above the speculative level, " ids="6161830" index="82" url="https://cite.case.law/us/355/41/#p47">id. , and that "a complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Twombly , 550 U.S. at 557, 127 S.Ct. 1955 ). In this context, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly , 550 U.S. at 556-57, 570, 127 S.Ct. 1955 ).
Starting the improper joinder analysis with the pleadings, Plaintiffs assert negligence causes of action against the Healthcare Defendants pursuant to the Texas Medical Liability Act ("TMLA").[5] (Pls.' Am. Orig. Pet. paras. 59-67.) Under the standard set forth in Smallwood , this requires the Court to undertake a "Rule 12(b)(6)-type" analysis of whether Plaintiffs' allegations are sufficient to demonstrate the existence of a viable TMLA negligence claim since neither party has suggested that a summary inquiry is appropriate. The state court petition describes the basic background facts underpinning the claims brought against the Healthcare Defendants and the treatment Martinez received:
On 4/19/16, Mr. Martinez presented to South Texas Urgent Care, seen by Denise Nemeth, PA-C and Dr. Lewis Christian, with complaint of left buttocks pain *767 after lifting 2 gallons of tint, and when he stretched, he felt sudden pain to left buttocks 4 days ago. Assessment included was sciatic pain, sprains and strains of other parts of back, muscle aches, observation following accident at work.
On 4/22/16, Mr. Martinez presented to Fort Duncan Regional Medical Center with left leg pain x 3 days. He reported going to South Texas Urgent Care and diagnosed with sciatica problem and given Tylenol with codeine, which he stated only worked for 30 minutes. He was treated and discharged with Flexeril 10mg 1 P0 TID PRN for spasms and to follow up with South Texas Urgent Care in 1-2 days.
On 4/30/16, he followed up Fort Duncan Regional Medical Center for acute exacerbation of low back pain. Russell Jones, NP (supervised by Patrick Schaner, M.D.) prescribed 60mg of IM Toradol which was administered into his left buttock by Gabriel Martinez.
On 5/5/16 , he followed up at South Texas Urgent Care for muscle aches and bilateral leg pain. Denise Nemeth, P.A. (supervised by Lewis Christian, M.D.) prescribed 60mg of TM Toradol which was administered into his left buttock as (4) 15 mg injections by Alejandra Maldonado MA.
On 5/7/16, he presented to Fort Duncan Regional Medical Center with disorientation. A CT of the abdomen and pelvis showed a left pelvic retroperitoneal abscess /myositis centered in left iliacus and piriformis muscles, extending superficially into left gluteal muscles and buttock, with muscle swelling, edema, some ill-defined fluid collections and gas bubbles. It was felt that he required ICU care for his sepsis and drainage of his abscess and he was transferred directly to the Baptist Health System for continued care. He underwent an Interventional Radiology guided drainage of pus from the left retroperitoneal abscess which grew MSSA (methicillin susceptible staphylococcus aureus). He also developed streptococcal infections as well. He was treated with IV antibiotics and a neurosurgeon was consulted due to worsening neurologic deficits were noted and work up showed acute multi embolic stroke with possible septic emboli as the etiology for his unexpected stroke. His septic condition worsened and he experienced worsening renal failure requiring dialysis. Despite all of his treatments, his condition continued to deteriorate and he died on 05/30/16.
(Pls.' Am. Orig. Pet. 5-6 (emphasis omitted).) Plaintiffs then proceed to spend the next 47 pages of the petition describing the history of Toradol in setting forth the eight causes of action brought against the Pharmaceutical Defendants. (Id. at 6-53.)
The TMLA was codified in Chapter 74 of the Texas Civil Practice and Remedies Code. The elements of a cause of action for medical negligence under the TMLA are: (1) the defendant is a "physician" or "health care provider," (2) the plaintiff's cause of action is a "health care liability claim," (3) the defendant owed the plaintiff a duty of care; (4) the defendant breached its duty of care by failing to meet the required standard of care; and (5) the defendant's breach proximately caused the plaintiff's injury. Marks v. St. Luke's Episcopal Hosp. , 319 S.W.3d 658, 662 (Tex. 2010) ; Windrum v. Kareh , --- S.W.3d ----, 2019 WL 321925, 62 Tex. Sup. Ct. J. 364 (Tex. Jan. 25, 2019). The TMLA defines a "[p]hysician" as an "individual licensed to practice medicine" in the state of Texas and also includes professional associations, partnerships, limited liability partnerships, and other companies formed by physicians. Tex. Civ. Prac. & Rem. Code § 74.001(a)(23). A "[h]ealth care provider"
*768 is defined by the TMLA as "any person, partnership, professional association, corporation, facility, or institution duly licensed ... by the State of Texas to provide health care, including: ... a registered nurse ...." Id. § 74.001(a)(12). Likewise, it specifies that a "[h]ealth care liability claim" means "a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care ... which proximately results in injury to or death of a claimant ...." Id. § 74.001(a)(13). There is a rebuttable presumption that a cause of action is a "health care liability claim" if it is "based on facts implicating the defendant's conduct during the course of a patient's care, treatment, or confinement." Loaisiga v. Cerda , 379 S.W.3d 248, 256 (Tex. 2012).
The facts and allegations set forth in the petition are sufficient to meet the first two elements of a TMLA medical negligence claim for every one of the Healthcare Defendants. As to Defendants Lewis S. Christian, Jr., M.D. and Patrick Schaner, M.D., Plaintiffs have alleged that they are physicians licensed to practice medicine in Texas, which falls within the statutory definition of a "health care provider" and allege a "health care liability claim" against them through the assertion that they were negligent in failing to use ordinary care in treating Martinez, appropriately supervising assistants, and permitting the off-label administration of Toradol injections. (Pls.' Orig. Am. Pet. 2, 3, 53, 56-57.) Likewise, Defendant Gabriel Martinez, R.N. is alleged to be a registered nurse which falls directly under the TMLA's definition of "health care provider." Tex. Civ. Prac. & Rem. Code 74.001(a)(12)(A)(I). The claims against R.N. Martinez sound in negligence with the suggestion that he failed to use ordinary care in the administration of Toradol, and also meet the requirements for a "health care liability claim." (Pls.' Am. Orig. Pet. 3, 58.) Texas courts treat physician's assistants and nurse practitioners as "health care provider[s]" under the TMLA, Kelly Ryan Cook, P.A. v. Spears , 275 S.W.3d 577, 583 (Tex. App.-Dallas 2008, no pet.) (physician's assistant), Baylor Med. Ctr. v. Wallace , 278 S.W.3d 552, 563 (Tex. App.-Dallas 2009) (nurse practitioner), meaning Defendants Denise V. Nemeth, P.A. and Russel Jones, N.P. qualify as such, and Plaintiffs' claims against them are for negligence arising out of their alleged failure to use ordinary care in prescribing and administering Toradol in an off-label manner. (Pls.' Orig. Am. Pet. 2, 3, 54, 57.) As a medical assistant, Defendant Alejandro Maldonado also is a "health care provider" by statutory definition because the definition includes "employee[s] ... of a 'health care provider' or physician acting in the course and scope of the employment or contractual relationship," Tex. Civ. Prac. & Rem. Code § 74.001(a)(12)(B)(ii), and the Petition alleges that Maldonado is an employee of a "health care provider." (Pls.' Am. Orig. Pet. 55); see also Valley Baptist Med. Ctr. v. Azua , 198 S.W.3d 810, 814 (Tex. App.-Corpus Christi 2006, no pet.) (applying TMLA provisions to suit involving the alleged negligence of an orderly based upon orderly's status as an employee of a health care provider). As will be explained shortly, Maldonado's employer, Defendant South Texas Urgent Care qualifies as a "health care provider" under the TMLA. And there are allegations against Maldonado that he was negligent because he failed to use ordinary care in the administration of Martinez's Toradol injections, (Pls.' Am. Orig. Pet. 55), which assert a "health care liability claim." Defendant South Texas Urgent Care also fits the TMLA's definition of a "health care provider" as the term has been defined to reach "any person, *769 partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care ...." Tex. Civ. Prac. & Rem. Code § 74.001(a)(12)(A). Plaintiffs' negligence allegations against South Texas Urgent Care are that it failed to adequately train staff, enforce policies, and provide Martinez with a medication guide, which fall within the coverage of the TMLA's definition of a "[h]ealth care liability claim," and Plaintiffs also assert that South Texas Urgent Care is vicariously liable for the negligence of its employees, Dr. Christian, P.A. Nemeth, and M.A. Maldonado. (Pls.' Am. Orig. Pet. 54-56.) Finally, Defendant Fort Duncan is a hospital and meets the statutory definition of a "[h]ealth care institution," Tex. Civ. Prac. & Rem. Code § 74.001(a)(11)(G), and thus also is a "[h]ealth care provider" by definition, id. § 74.001(a)(12)(A)(vii), and Plaintiffs' negligence allegations against Fort Duncan involve a "health care liability claim" since they concern Fort Duncan's alleged failure to adequately train staff, failure to enforce adequate policies and procedures, and failure to provide Martinez a required medication guide in addition to Plaintiffs' assertion that For Duncan is vicariously liable for the negligence of its employees, Dr. Schaner, N.P. Jones, and R.N. Martinez. (Pls.' Am. Orig. Pet. 57-59.)
The petition's allegations likewise sufficiently address the final three elements of Plaintiffs' TMLA claim: duty, breach, and causation of damages. As to Dr. Christian and Dr. Schaner, it is well-established that a physician owes his or her patient a legal duty of care. St. John v. Pope , 901 S.W.2d 420, 424 (Tex. 1995). The general duty of a physician or health care provider is to act as a reasonably prudent physician or health care provider would act in the same or similar circumstances. Chambers v. Conaway , 883 S.W.2d 156, 158 (Tex. 1993) ; see also Jackson v. Axelrad , 221 S.W.3d 650, 655 (Tex. 2007). When a physician delegates the performance of a medical act to a qualified and properly trained person under his or her supervision, the physician can be held directly liable for the performance of the medical act. See Petty v. Churner , 310 S.W.3d 131, 138 (Tex. App.-Dallas 2010, no pet.) (discussing Tex. Occ. Code § 157.001(b) ). In setting forth their negligence claim against Dr. Christian, Plaintiffs assert that he is directly liable for his breach of the general duty of care owed to Martinez and also liable for his inadequate supervision of P.A. Nemeth in permitting the administration of Toradol in an off-label manner to Martinez. (Pls.' Am. Orig. Pet. 53.) Plaintiffs further assert that Dr. Christian breached his duties and, as a result, Martinez developed abscesses at his injection site and sepsis which ultimately led to his death. (Id. ) Plaintiffs make identical allegations against Dr. Schaner with respect to his breach of the general duty of care and for his inadequate supervision of Russell Jones, N.P., (id. at 56-57), and therefore also adequately allege these elements of their claim against Dr. Schaner.
Similar to physicians, nurses owe a duty of care to their patients. Lunsford v. Bd. of Nurse Exam'rs , 648 S.W.2d 391, 394-95 (Tex. App.-Austin 1983, no writ). They have a general duty to use care in performing assigned tasks even though they cannot practice medicine or make medical diagnoses. Methodist Hosp. v. German , 369 S.W.3d 333, 341-42 (Tex. App.- Houston [1st Dist.] 2011, pet. denied). Specific duties of care applicable to all nurses are "the requirements that a nurse know the rationale for and effects of medications and treatments and correctly administer them, as well as accurately and completely reporting the patient's signs, *770 symptoms, and responses." Id. (citing 22 Tex. Admin. Code § 217.11(1)(C), (D) ). Nurse practitioners must abide by the standards applicable to registered nurses and also have additional authority to prescribe medication and are subject to additional standards relating to that authority. 22 Tex. Admin. Code §§ 217.11(4), 221.2. To further describe the specifics of their negligence claims against Russell Jones, N.P. and Gabriel Martinez, R.N., Plaintiffs assert in the petition that these Defendants are liable for their breach of their general duty of care owed to Martinez. (Pls.' Am. Orig. Pet. 57, 58.) Plaintiffs additionally assert that N.P. Jones breached the duties of care he owed in connection with prescribing and ordering the administration of Toradol in an off-label manner to Martinez, (id. at 57), and that R.N. Martinez breached his duty of care with respect to the proper administration of Toradol. (Id. at 58.) These failures, according to Plaintiffs, proximately caused the abscesses that led to Martinez's sepsis and death, (id. ), and thus allege the existence of a duty, breach, and damages.
There is little law concerning the specific duties of care owed by a physician's assistant or medical assistant. At a minimum, however, each has the general duty to act as a reasonably prudent physician's assistant or medical assistant would act in the same or similar circumstances. Chambers , 883 S.W.2d at 158 (observing that health care providers have the general duty to act as a reasonably prudent health care provider would in the same or similar circumstances). Additionally, given a physician's assistant's prescription authority, a physician's assistant also owes a duty of care to exercise that authority in a reasonably prudent manner and consistent with governing regulations. See, e.g. , 22 Tex. Admin. Code § 185.10. To flesh out their claims against P.A Nemeth, Plaintiffs allege that she failed to use ordinary care in treating Martinez and bears liability for her prescription of, and order to administer, Toradol in an off-label manner to Martinez. (Pls.' Am. Orig. Pet. 54.) As a result of her alleged breach of her duties, Plaintiffs assert that Martinez developed abscesses that led to sepsis and death. (Id. ) A medical negligence claim thus is stated against her.
With respect to M.A. Maldonado, Plaintiffs assert that he failed to use ordinary care and administered Toradol in an unsafe manner and improperly by giving Martinez four separate 15mg injections to arrive at the prescribed 60mg total. (Id. at 55.) But the petition is lacking any allegations causally linking these alleged failures to Martinez's death. (See index="112" url="https://cite.case.law/citations/?q=22%20Tex.%20Admin.%20Code%20%C2%A7%20185.10">id. ) The petition thus does not adequately allege a claim against M.A. Maldonado as allegations pertaining to every element of a cause of action are necessary to state a claim under federal standards. Tuchman v. DSC Commc'ns Corp. , 14 F.3d 1061, 1067 (5th Cir. Tex. 1994). The failure to adequately allege causation and damages in connection with the claim brought against M.A. Maldonado appears to be the result of oversight rather than due to the lack of a supporting factual basis given the petition's general allegations that Martinez's development of the abscesses that caused his sepsis and death are attributable, at least in part, to the manner in which Toradol was administered.
Under Texas law, hospitals owe a general duty of care to do what a reasonably prudent hospital using ordinary care would do under the same or similar circumstances. In re McAllen Med. Ctr., Inc. , 275 S.W.3d 458, 463 (Tex. 2008.) A hospital may breach this duty in a variety of ways including, relevant here, failing to use reasonable care in formulating the policies and procedures that govern its medical *771 staff and negligently supervising staff. Denton Reg'l Med. Ctr. v. LaCroix , 947 S.W.2d 941, 950 (Tex. App.-Fort Worth 1997, pet. denied) (per curiam); see also McCombs v. Children's Med. Ctr. , 1 S.W.3d 256, 259 (Tex. App.-Texarkana 1999, pet. denied). Likewise a hospital can bear respondeat superior liability for the acts and omissions of its employees, as Plaintiffs' petition asserts. LaCroix , 947 S.W.2d at 949. The elements of a basic respondeat superior cause of action are that (1) the plaintiff was injured as the result of a tort, (2) the tortfeasor was an employee of the defendant, and (3) the tort was committed while the employee was acting within the course and scope of employment. See Baptist Mem'l Hosp. Sys. v. Sampson , 969 S.W.2d 945, 947, 949 (Tex. 1998). Plaintiffs allege that Fort Duncan is both directly and vicariously liable. In particular, as to vicarious liability, Plaintiffs contend generally that Martinez was injured as the result of the medical negligence of Dr. Schaner, N.P. Jones, and R.N. Martinez previously described in this Report and Recommendation, that these individuals were employed by Fort Duncan, and that the medical negligence occurred within the course and scope of their employment at Fort Duncan. (Pls.' Am. Orig. Pet. 56-59.) Thus there are allegations pertaining to each and every element of a respondeat superior claim against Fort Duncan. With respect to Fort Duncan's direct liability, Plaintiffs assert that Fort Duncan failed to adequately train its staff, failed to have or enforce adequate policies and procedures, and failed to provide Martinez a medication guide as required by 21 C.F.R. § 208.24. As a result of these deficiencies, Plaintiffs contend, Martinez suffered the injuries that ultimately led to his death. (Id. at 59.) These sufficiently set forth a direct liability claim against Fort Duncan.
As to South Texas Urgent Care, Plaintiffs assert that Dr. Christian, P.A. Nemeth, and M.A. Maldonado all committed acts or omissions of medical negligence during the course and scope of their respective employment for South Texas Urgent Care. (Id. at 53-55). Combined with the allegations detailing the medical negligence at issue, these are sufficient to state a respondeat superior claim against South Texas Urgent Care. See Sampson , 969 S.W.2d at 947, 949 ; see also Battaglia v. Alexander , 177 S.W.3d 893, 901-903 (Tex. 2005). It is also possible under appropriate circumstances for a physician's professional association to bear direct liability for the failure of its member physicians to exercise reasonable care in properly supervising, training, educating, or evaluating its employees, Alexander , 177 S.W.3d at 900-901, and Plaintiffs appear to be attempting to assert a direct liability claim against South Texas Urgent Care for its failures in adequately training staff, enforcing procedures, and providing a medication guide to Martinez. (See Pls.' Am. Orig. Pet. 56.) But the undersigned cannot conclude, based on the petition's allegations, that a direct liability claim against South Texas Urgent Care has been sufficiently set forth. For present purposes however, this is inconsequential because if even one claim is properly alleged against a non-diverse defendant such as South Texas Urgent Care, that one claim is adequate to deprive a federal court of diversity jurisdiction over the suit. In this context, Plaintiffs' vicarious liability claim based upon respondeat superior is adequate to state a claim against South Texas urgent care and show it is not an improperly joined defendant.
To summarize, when the background factual allegations describing the medical treatment Martinez received and his demise are coupled with the specific causes of action that Plaintiffs allege against the Healthcare Defendants, it is readily apparent *772 that the petition on which the removal was based adequately states a claim by reference to federal pleading standards against at least one of the Healthcare Defendants and very nearly states a claim against all of them. Plaintiffs' description of each of the Healthcare Defendants' acts and omissions and their individual role in providing Martinez with medical care are significantly more than "naked assertions devoid of further factual enhancement, Iqbal , 556 U.S. at 678, 129 S.Ct. 1937, and state facially plausible claims against them. The petition contains factual content that allows the Court to draw the reasonable inference that the Healthcare Defendants are liable for the misconduct alleged and the descriptions of the alleged breaches of their duties to use ordinary care in the providing the medical treatment given to Martinez, including in the prescribing and administering of Toradol injections to Martinez, in the supervision and training of employees, and in the enforcement of policies and procedures related to the use of Toradol, show more than a sheer possibility that the Healthcare Defendants acted unlawfully. See ids="3653744" index="125" url="https://cite.case.law/us/556/662/#p678">id.
The Pharmaceutical Defendants' main argument in support of their contention that the Healthcare Defendants are improperly joined is that the gravamen of Plaintiffs' suit is their product liability claims brought against the Pharmaceutical Defendants. (See Not. of Removal paras. 35-40.) Whether true or not, this is beside the point. In the Fifth Circuit, under Smallwood and its progeny, if the plaintiff states a single viable cause of action, by reference to federal pleading standards, against a non-diverse defendant, that is adequate to show that the non-diverse defendant is not improperly joined, that the common state citizenship may not be ignored, and that federal diversity jurisdiction is lacking. The Pharmaceutical Defendants further contend that if Plaintiffs' contentions concerning the Pharmaceutical Defendants' liability are taken as true, that necessarily negates the possibility that the Healthcare Defendants acted negligently with respect to their use of Toradol. (Resp. to Pls.' Mot. to Rem. 8, ECF No. 25.) This argument is a red herring. Pleading in the alternative, even where legal theories may be inconsistent, is a common and long-accepted practice in both the federal courts and Texas's state courts. See, e.g. , Fed. R. Civ. P. 8(d)(2)-(3) ; Tex. R. Civ. P. 47, 48.
2. Fraudulent Misjoinder
As an alternative basis for concluding that the non-diverse citizenship of the Healthcare Defendants should be disregarded, the Pharmaceutical Defendants urge the Court to employ an alternate basis for finding improper joinder - commonly referred to as fraudulent misjoinder - that the Eleventh Circuit first recognized in Tapscott v. MS Dealer Service Corporation , 77 F.3d 1353, 1360 (11th Cir. 1996), abrogated in part on other grounds by Cohen v. Office Depot , 204 F.3d 1069 (11th Cir. 2000). (See Not. of Removal paras. 13-17.) In Tapscott , the Eleventh Circuit recognized, in addition to actual fraud in the pleadings and inability to state a cause of action, that the fraudulent misjoinder of a non-diverse defendant may serve as an additional basis for concluding that the defendant is improperly joined. 77 F.3d at 1360 ("Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action" (footnote omitted)); see also Palermo v. Letourneau Techs., Inc. , 542 F. Supp. 2d 499, 511 (S.D. Miss. 2008). The fraudulent misjoinder doctrine has not been expressly adopted by the Fifth Circuit Court of Appeals, but the Court of Appeals has recognized the general principle in dicta , indicating that it *773 could be applied under the appropriate circumstances, and several federal district courts in the Fifth Circuit have applied the doctrine. See, e.g. , In re Benjamin Moore & Co. , 309 F.3d 296, 298 (5th Cir. 2002) ; In re Benjamin Moore & Co. , 318 F.3d 626, 631 (5th Cir. 2002) ; Crockett v. R.J. Reynolds Tobacco Co. , 436 F.3d 529, 533 & n.5 (5th Cir. 2006) ; Palermo , 542 F. Supp. 2d at 512-16 (discussing evolution of the acceptance of Tapscott in the Fifth Circuit); see also, e.g. , Wells Fargo Bank, N.A. v. Am. Gen. Life Ins. Co. , 670 F. Supp. 2d 555, 559 (N.D. Tex. 2009) ; Tex. Instruments Inc. v. Citigroup Global Mkts., Inc. , 266 F.R.D. 143, 147 (N.D. Tex. 2010). Indeed, the undersigned has expressed a willingness to apply the doctrine under the appropriate circumstances, but has not yet been presented an action where its use has been warranted. See e.g. , Southern Commodities LLC v. Cont'l W. Ins. Co. , No. 2:17-CV-011-AM-VRG, 2017 WL 5203051, at *3-5, 2017 U.S. Dist. LEXIS 204891, at *11-17 (W.D. Tex. July 25, 2017) (unpublished), adopted by 2017 WL 5484693, at *1, 2017 U.S. Dist. LEXIS 204890 (W.D. Tex. Aug. 14, 2017) (unpublished). The fraudulent misjoinder doctrine exists to fill in the gap where a plaintiff may be able to state a viable cause of action against a non-diverse defendant and thus could show that the non-diverse defendant is not improperly joined, but the joinder of the non-diverse defendant is not made in good faith, see Tapscott , 77 F.3d at 1360, because the joined parties and claims lack a "palpable connection, causing the joinder to be egregious, totally unsupported or a purposeful attempt to defeat removal." Wells Fargo , 670 F. Supp. 2d at 563 (citation omitted).
A two-step analysis is used to determine whether a party is fraudulently misjoined. See Tapscott , 77 F.3d at 1360 ; see also Tex. Instruments , 266 F.R.D. at 147. First, courts consider whether a misjoinder has occurred by evaluating the appropriateness of joining the claims and parties under the governing state joinder law. Wells Fargo , 670 F. Supp. 2d at 563 ; Tex. Instruments , 266 F.R.D. at 147-49 & n.3. Texas Rule of Civil Procedure 40 governs the permissive joinder of claims against defendants in a suit filed in Texas and permits joinder of claims and defendants if: (1) "there is asserted against them jointly, severally, or in the alternative any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences" and (2) at least one "question of law or fact common to all of them will arise in the action." Tex. R. Civ. P. 40(a). Like the federal courts evaluating permissive joinder under Federal Rule of Civil Procedure 20, Texas courts apply a "logical relationship" test to determine whether claims arise out of the same transaction or occurrence or series of transactions or occurrences. Tex. Instruments , 266 F.R.D. at 148 ; see also Blalock Prescription Ctr., Inc. v. Lopez-Guerra , 986 S.W.2d 658, 663 (Tex. App.-Corpus Christi 1998, no pet.). The logical relationship test is a "loose standard which permits a broad realistic interpretation in the interest of avoiding a multiplicity of suits." Nat'l Liability & Fire Ins Co. v. R & R Marine, Inc. , 756 F.3d 825, 835 (5th Cir. 2014) (quotation omitted); see also Blalock , 986 S.W.2d at 663 ("Under this test, a transaction is flexible, comprehending a series of many occurrences logically related to one another"); see also Pitts & Collard, LLP v. Schechter , 369 S.W.3d 301, 324 (Tex. App.-Houston [1st Dist.] 2011, no pet.) (applying test in counterclaim context and describing it as met when "the same facts, which may or may not be disputed, are significant and logically relevant to both claims"). Further, Texas Rule of Civil Procedure 40(a) is interpreted in accordance *774 with state policy that encourages broad joinder of multiple parties in the same action. Tex. Instruments , 266 F.R.D. at 148-49 (citing In re E.L.P. , 636 S.W.2d 579, 581 (Tex. App.- San Antonio 1982, no writ) ).
If the court finds that a non-diverse defendant is misjoined, it proceeds to the second step and considers whether that misjoinder is fraudulent. Tapscott cautioned that not every instance of "mere misjoinder" rises to the level of a "fraudulent" misjoinder. 77 F.3d at 1360. The fraudulence inquiry concerns the egregiousness of the misjoinder and a joinder is considered "fraudulent" when misjoined parties and claims are "wholly distinct" with "no real connection" to each other such that their joinder is "bordering on a sham." Id. (quotation omitted); see also Tex. Instruments , 266 F.R.D. at 149. Given the strictness of this test, it is rare for a court to find that claims have been fraudulently misjoined. See Tex. Instruments , 266 F.R.D. at 149-52 (discussing outer limits of Tapscott 's application and noting the rarity of exercising federal jurisdiction in cases with allegations of fraudulent misjoinder).
Applying this two-step analysis to the claims asserted in the petition against the Healthcare Defendants leads to the conclusion that they are not fraudulently misjoined in this action. In the petition, Plaintiffs assert medical negligence claims against the Healthcare Defendants and product liability claims against the Pharmaceutical Defendants. Considering the first step of the inquiry - whether there is a common transaction or occurrence and a common question of law or fact - the claims asserted against the Healthcare Defendants and Pharmaceutical Defendants are sufficiently related to satisfy the logical relationship test. One example of a common area of factual inquiry implicated by Plaintiffs' claims asserted against all of the Defendants concerns the prescription and administration of Toradol, particularly with respect to what information was or was not available from the Pharmaceutical Defendants for the use by the Healthcare Defendants. Another may involve common questions of law and fact as to the relative liability of the Defendants as well as the extent to which damages may be attributable to a particular Defendants' liability. Given that the logical relationship test takes a "broad realistic interpretation" of the claims "in the interest of avoiding a multiplicity of suits," these common questions show a common fact issue and demonstrate that the claims arise out of the same occurrence or series of occurrences. Thus, they are not misjoined. See, e.g. , In re Xarelto (Rivaroxaban) Prods. Liab. Litg. , MDL No. 2592 Section L, 2016 WL 4409555, at *7-8, 2016 U.S. Dist. LEXIS 110644, at *23-24 (E.D. La. Aug. 19, 2016) (unpublished) (rejecting Tapscott - based argument that claims brought against pharmaceutical manufacturer defendants were fraudulently misjoined with claims asserted against healthcare provider defendants by reference to Texas state law joinder rules).
Even were the Court to disagree and conclude that Plaintiffs' claims against the Healthcare Defendants and the Pharmaceutical Defendants are misjoined, it is challenging to find that the misjoinder arises to more than a "mere misjoinder." Plaintiffs' claims against the Healthcare Defendants and the Pharmaceutical Defendants are not "wholly distinct" with "no real connection" such that their joinder is "bordering on a sham." The undersigned has identified several plausible bases for concluding that Plaintiffs' claims asserted against the Healthcare Defendants and the Pharmaceutical Defendants arise out of the same transaction or occurrence or series *775 of transactions or occurrences. The situation presented by Plaintiffs' joinder of their claims against the Healthcare Defendants and the Pharmaceutical Defendants lies far from the outer limits of courts' willingness to apply Tapscott and conclude that a misjoinder arises to fraudulent.
For these reasons, the Healthcare Defendants are not fraudulently misjoined and their Texas citizenship cannot be disregarded.
3. Severance
As their primary argument in support of the removal of this suit, the Pharmaceutical Defendants invoke Federal Rules of Civil Procedure 20 and 21 and assert that the District Court should employ them to sever the claims asserted against the Pharmaceutical Defendants from those asserted against the Healthcare Defendants and retain diversity jurisdiction over the suit that proceeds against Pharmaceutical Defendants. (Not. of Removal paras. 28-31; Resp. to Pls.' Mot. to Remand 4-7.) In the undersigned's view, for numerous reasons only the primary of which will be very briefly discussed here, employing such a procedure under the current circumstances is inappropriate. See, e.g. , In re Xarelto , 2016 WL 4409555, at *5-7, 2016 U.S. Dist. LEXIS 110644, at *18-22 (rejecting similar Rule 21 -based request for discretionary severance and identifying additional reasons for declining to do so as well as additional cases declining to do so). The Pharmaceutical Defendants have not pointed to any authority from the Fifth Circuit that would authorize the Court to do what it asks them to do via these contentions, nor have they identified a single Texas federal district court doing so either. (Not. of Removal paras. 28-31; Resp. to Pls.' Mot. to Remand 4-7.) The Supreme Court has approved of the practice of a court of appeals' dismissal of a non-diverse, dispensable party to perfect jurisdiction, but it emphasized that such authority should be used "sparingly." Alfonzo-Larrain , 490 U.S. at 837, 109 S.Ct. 2218. In arriving at this conclusion, the Supreme Court relied heavily on practical concerns and the preservation of the parties' resources, ids="605006" index="163" url="https://cite.case.law/us/490/826/#p837">id. at 837, 109 S.Ct. 2218, and noted that their approval of the practice was an exception to the general rule that the existence of federal jurisdiction ordinarily depends on the facts as they exist at the time suit is filed. Id. at 830, 109 S.Ct. 2218. Similarly, in Caterpillar, Inc. v. Lewis , the Supreme Court permitted a judgment to stand that was rendered in a case improperly removed to federal court on the purported basis of diversity jurisdiction after the original jurisdictional defect was cured by the post-settlement dismissal of the non-diverse party. 519 U.S. 61, 64, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996). Recently, the Fifth Circuit invoked these general principles and acknowledged that "[d]ismissals of non-diverse parties allow for the exercise of diversity jurisdiction, and the propriety of remand in a properly removed case is judged on the basis of the district court's jurisdiction over the claims remaining at the time of remand, not the time of removal" before it concluded in an unusual case that a district court lacked "discretion to remand this case if the remaining parties were diverse at the time of removal." Jefferson v. Certain Underwriters at Lloyd's London , 658 Fed. Appx. 738, 743 (5th Cir. 2016) (per curiam). But there is no authority that shows it is permissible to do what the Pharmaceutical Defendants ask, that is, to create diversity jurisdiction to support a removal by dismissing non-diverse defendants where the generally accepted method of doing so in the Fifth Circuit, showing improper joinder under Smallwood , has failed, and the less common alternative supporting argument based Tapscott and fraudulent misjoinder, also has failed. For *776 these reasons, the undersigned sees no basis for the District Court to sever the Healthcare Defendants pursuant to Rule 21, particularly given that the Courts of Appeals have been admonished by the Supreme Court to use their power to do so "sparingly," there are not concerns about attempting to conserve judicial or party resources at this point in this litigation as the merits of the case have yet to be heard, and the Pharmaceutical Defendants are not be entitled to the result they seek under an ordinary improper joinder analysis.
Because the Court lacks diversity jurisdiction over this suit, it should be remanded. Given the Fifth Circuit's clear statement that District Courts only have jurisdiction to consider their jurisdiction until an improperly joined, non-diverse party is dismissed, see Int'l Energy Ventures Mgmt. , 818 F.3d at 209, and that is not the case in this cause, the Court lacks jurisdiction to act on Defendants' motion to dismiss.
III. COSTS
Title 28 U.S.C. § 1447(c) permits a court to award "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Whether fees and expenses should be awarded under § 1447(c) is a decision within the court's discretion and turns on the reasonableness of the removal. Martin v. Franklin Capital Corp. , 546 U.S. 132, 141, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005). Generally, the court "may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Id. In considering the reasonableness of the removal, the court looks only to the objective merits of removal at the time of removal. Valdes v. Wal-Mart Stores, Inc. , 199 F.3d 290, 293 (5th Cir. 2000).
Given Plaintiffs' lack of a request for costs associated with litigating the motion to remand, the undersigned does not recommend that costs be awarded.
IV. CONCLUSION & NOTICE
For the aforementioned reasons, it is RECOMMENDED that Plaintiff's motion to remand [ECF No. 19] be GRANTED and that this matter be remanded to the 293rd Judicial District Court of Maverick County, Texas. Defendants' request for oral argument on the motion to remand is DENIED. In light of this conclusion, it is further RECOMMENDED that Defendants' motion to dismiss [ECF No. 7] be DENIED as moot for lack of jurisdiction.
The parties may wish to file objections to the above recommendations. Failure to file written objections to the findings and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its receipt shall bar an aggrieved party from receiving de novo review by the District Court of the findings and recommendations contained herein, see 28 U.S.C. 636(b)(1)(C), and shall bar an aggrieved party, except on grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. See Douglass v. United Servs. Auto. Ass'n , 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). To the extent any party has not been served by the Clerk with this Report and Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk shall promptly mail copies of this Report and Recommendation to all parties and their counsel by certified mail, return receipt requested. This Report and Recommendation does not dispose of all issues and controversies referred *777 to the undersigned in the above-captioned cause.
SIGNED this 1st day of February, 2019.

The Defendants, Hospira Worldwide, Inc., Hospira Inc., and Pfizer, Inc., collectively, are the "Pharmaceutical Defendants" for the purposes of this order. The remaining Defendants will be referred to as the "Healthcare Defendants."

The amount in controversy is not at issue in this case as the Plaintiffs are seeking at least $1 million in monetary damages and the Defendants have not presented evidence asserting this claim was made in bad faith. (ECF No. 1-1 at 65.)

The Notice of Removal refers to the Healthcare Defendants as being "fraudulently joined," (Not. of Removal 13), but in the Fifth Circuit the term "improper joinder" is preferred over "fraudulent joinder." Smallwood v. Ill. Cent. R.R. Co. , 385 F.3d 568, 571 n.1 (5th Cir. 2004) (en banc). However, no substantive difference between the terms exists. Id.

In their Notice of Removal, the Pharmaceutical Defendants represent that Hospira Worldwide, Inc. was converted into Hospira Worldwide, LLC, also named as a Defendant in this suit, and also a citizen of Delaware and Illinois. (Not. of Removal para. 18.)

Plaintiffs' assertion in their briefing that the removing defendant must come forward with "clear and convincing evidence that there is no reasonable basis to predict that a plaintiff will be able to recover in state court" against the non-diverse defendant is not an accurate statement of the governing law. (See Pls.' Mot. to Remand 4.) The Fifth Circuit's 2004 en banc decision in Smallwood articulates what has been, and continues to be, the analytical framework applicable to the evaluation of claims of improper joinder. See, e.g. , Int'l Energy Ventures Mgmt. , 818 F.3d at 200 (employing Smallwood "Rule 12(b)(6)-type" framework in reviewing questions regarding improper joinder). Relevant here, Smallwood instructs district courts that they may evaluate claims of improper joinder by considering whether the allegations of the complaint are sufficient to state a claim against the in-state defendant in a "Rule 12(b)(6)-type" analysis. Id. ; see also Smallwood , 385 F.3d at 573. Smallwood imposes no requirement that a defendant come forward with any evidence, let alone clear and convincing evidence, of the plaintiff's inability to recover against the in-state defendant. See Smallwood , 385 F.3d at 573 (resolving uncertainty over the standard and proper means for evaluating whether a reasonable basis to predict recovery under state law).

Plaintiffs' motion to remand briefing erroneously relies on Texas's more liberal "fair notice" pleading standard for determining whether the petition's allegations are sufficient to permit the District Court to determine whether there is a reasonable basis to predict that Plaintiffs might be able to recover against the non-diverse Healthcare Defendants. (See Pls.' Mot. to Remand 5-6.) While formerly there was an open question in the Fifth Circuit about which pleading standard applied in this context, the issue definitively has been settled in favor of the use of the federal pleading standard for nearly three years. Int'l Energy Ventures , 818 F.3d at 208 ("Our precedent is clear: A federal court must apply the federal pleading standard.").

Plaintiffs' failure to specifically invoke the TMLA as the basis of their negligence causes of action in the petition does not render the TMLA inapplicable or mean that Plaintiffs have asserted only an "ordinary" negligence claim against the Healthcare Defendants. Under Texas law, a plaintiff cannot bring a negligence claim in addition to or as an alternative to a healthcare liability claim when the facts underlying the claim are covered by the TMLA. See Yamada v. Friend , 335 S.W.3d 192, 193-94, 197 (Tex. 2010). The TMLA applies to all "health care liability" claims which are defined as claims brought "against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant." Tex. Civ. Prac. & Rem. Code § 74.001(a)(13). Plaintiffs' claims against the Healthcare Defendants fall within the ambit of the TMLA because their allegations against these individual Healthcare Defendants, in general, are that they failed to use ordinary care when treating Martinez's conditions and used Toradol in an off-label manner. (Pls.' Am. Orig. Pet. 53-58.) Such clams unquestionably fall within the TMLA's definition of a "health care liability claim."